396 So.2d 791 (1981)
Joseph R. BARNETT, Appellant,
v.
EMR TELEMETRY and Travelers Insurance Company, Appellees.
No. SS-396.
District Court of Appeal of Florida, First District.
March 27, 1981.
Rehearing Denied May 1, 1981.
Sheldon J. Gensler, Sarasota, for appellant.
Douglas P. Lawless of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, P.A., Sarasota, for appellees.
PER CURIAM.
The sole issue for our determination is whether claimant's examination by Dr. Padar on August 7, 1978 constituted remedial attention or remedial treatment as contemplated by Sections 440.13(3)(b) and 440.19(1)(a), Florida Statutes (1971). The deputy commissioner found that it did not and concluded therefore that the claim for compensation benefits, filed April 2, 1979, should be dismissed with prejudice. We reverse.
Section 440.13(3)(b) provides:
All rights for remedial attention under this section shall be barred unless a claim therefor is filed with the division within two years after the time of injury, except that if payment of compensation has been made or remedial attention has been furnished by the employer without an award on account of such injury a claim may be filed within two years after the date of the last payment of compensation or within two years after the date of the last remedial attention furnished by the employer; ... [Emphasis supplied]
Section 440.19(1)(a) provides:
The right to compensation for disability under this chapter shall be barred unless *792 a claim therefor is filed within two years after the time of injury, except that if payment of compensation has been made or remedial treatment has been furnished by the employer without an award on account of such injury a claim may be filed within two years after the date of the last payment of compensation or after the date of the last remedial treatment furnished by the employer. [Emphasis supplied]
Claimant was injured in an industrial accident January 22, 1972. Employer/carrier provided claimant medical treatment, voluntarily paid temporary total disability benefits, and voluntarily accepted and paid five percent permanent partial disability benefits, the last compensation being paid February 28, 1977. Around June, 1978, claimant's condition worsened requiring him to cease work. Claimant was advised by a letter from the carrier's representative dated July 19, 1978, that:
I have just received a call from our insured in connection with apparently the above captioned case.... Under the Workmen's Compensation Laws, the statute has not run on your case. If your are having problems relating to the 1972 accident, you have the right to medical treatment... . If you are in need of medical treatment relating to your 1972 accident, please call this writer... .
Claimant thereafter contacted the carrier's representative who informed him that he could see a physician of his choice and that the carrier would make an appointment with such physician. The carrier arranged an appointment for claimant to be seen by Dr. Padar on August 7, 1978. By the carrier's letter dated July 31, 1978, Dr. Padar was authorized "for evaluation and treatment if indicated." At the August 7th visit, Dr. Padar examined claimant and reviewed past x-rays. Dr. Padar found no evidence of a disc rupture or nerve root compression, but did find osteoarthritis of the lumbar spine at L4-5 and L5-S1, which he opined was not related to any job-sustained injury. Dr. Padar prescribed no medications for claimant and scheduled no further appointments.
In November 1978, claimant was seen by Dr. Wallace. Although explicitly not authorized by the employer/carrier, Dr. Wallace hospitalized claimant November 26, 1978 and performed a myelography which revealed a herniated intervertebral disc, previously undiagnosed. Surgery revealed a ruptured intervertebral disc at L3-L4, a herniation of the disc at L3-L4, plus a fracture of the L3 superior facet. Post-operatively, claimant was asymptomatic with no low back pain or sciatica.
Employer/carrier, relying upon Suddath Van Lines v. Williams, 8 F.C.R. 394 (1974), contends claimant's August 7th visit was a "mere examination" insufficient to toll the statute of limitations. We disagree, finding the facts here distinguishable from those in Williams.
A distinction has been drawn between "examination" and "treatment"; however, such distinction should not be artificially and unrealistically made. Daniell v. Florida Pulp & Paper Co., 1 F.C.R. 161 (1955), cert. denied 85 So.2d 758 (1955). To distinguish a "mere" examination from treatment, it is essential to examine not only the actual functions performed by the physician, but also the purpose of the physician's examination. Suddath Van Lines v. Williams, supra; The Great Atlantic & Pacific Tea Co. v. Skeen, 9 F.C.R. 201 (1975), cert. denied 325 So.2d 11 (Fla. 1975). Here, unlike Williams, the purpose of claimant's visit with Dr. Padar was not solely and exclusively for evaluative processes. Rather, the clear purpose of the visit, as evidenced by the carrier's letter, was for evaluation and treatment. Here, if claimant's condition had been properly diagnosed, the carrier's letter obviously served as a clear authorization for further remedial treatment. The fact that claimant's condition was not properly diagnosed and that the doctor's ministrations amounted to no more than a "no help" visit does not, in our view, mandate a determination that the medical attention was non-remedial. Cf., Food Fair Stores, Inc. v. Tokayer, 167 So.2d 563 (Fla. 1964); Daniell v. Florida Pulp & Paper Co., supra.
*793 Viewing the totality of the circumstances here, we find that the August 7th visit constituted remedial attention and treatment sufficient to toll the statute of limitations. Accordingly, the deputy's order dismissing the claim is reversed and the cause is remanded for further proceedings on the merits of the claim.
ERVIN, LARRY G. SMITH and SHIVERS, JJ., concur.