SHIVERS, Judge.
In this workers’ compensation case, Es-cribano appeals an order of the deputy commissioner which dismisses Escribano’s claim based on the running of the Statute of Limitations, section 440.19(2), Florida Statutes (1979). Appellant contends that the deputy commissioner erred in finding that the statute had run. We agree, reverse and remand.
Escribano was employed by Westinghouse from 1951 until 1981, working as a cleaner, metal finisher, and finally as a welder. Claimant was injured in a compen-sable industrial accident in 1971 when he tripped over a cable and felt pain in his low back. On November 13, 1979, claimant suffered a new industrial accident when he was carrying a piece of metal, tripped and twisted his back.
Appellant was a regular customer of the Westinghouse company medical facility, particularly after his back injury in 1971. He was treated in this medical facility for all types of ailments, both work related and non-work related. After his accident on November 13, 1979, claimant was seen by Dr. Tagliarini, the company doctor, who diagnosed muscle strain and prescribed norgesic forte and heat. On November 14, 1979, claimant returned to the clinic but declined heat due to having “no pain.” Claimant returned to the clinic a number of times over the course of the next year but none of these visits were because of back pain.
On March 12, 1981, claimant returned to the clinic complaining of back pain. The clinic’s entry for this date states, “4 p. cl o back pain — recurring—started last night— no unusual activity.” Dr. Tagliarini again prescribed norgesic forte, a muscle relaxant, to be taken for 7-10 days. Although claimant returned to the clinic a number of times after March 12, 1981, none of these visits were for back pain. On November 25, 1981, claimant’s employment was terminated because the plant was closed.
Dr. Vega, an orthopedic surgeon, and Dr. Rydell, a neurologic surgeon, testified that claimant’s underlying problem was degenerative disc disease. Both doctors testified, however, that the 1979 accident aggravated this pre-existing condition. Dr. Vega reported that if claimant declines corrective surgery, he will remain with a permanent disability of 15% of the body as a whole, of which 10% is related to the accident of 1979. Dr. Rydell stated that claimant has a 10% permanent disability of which the 1979 accident is responsible for approximately 5%.
On July 6, 1982, Escribano filed a claim for benefits resulting from the November 13, 1979 accident. The deputy commissioner denied the claim based on the Statute of Limitations. He found that claimant owed a responsibility to the employer to put the employer on notice at the time of claimant’s treatment on March 12, 1981, if he were contending that his back pain was related to his employment. The deputy commissioner also specifically found that the medical treatment rendered on March 12, 1981, was not furnished on account of the injury occurring in November 1979.
The relevant statutory provisions, section 440.19(2)(a) and (b), Florida Statutes (1979), read as follows:
(2)(a) The right to compensation for disability, impairment, or wage loss under this chapter shall be barred unless a claim therefor which meets the requirements of paragraph (d) is filed within 2 years after the time of injury, except that, if payment of compensation has been made or remedial treatment has been furnished by the employer on account of such injury, a claim may be filed within 2 years after the date of the *132 last payment of compensation or after the date of the last remedial treatment furnished by the employer.
(b) All rights for remedial attention under this section shall be barred unless a claim therefor which meets the requirements of paragraph (d) is filed with the division within 2 years after the time of injury, except that, if payment of compensation has been made or remedial attention has been furnished by the employer without an award on account of such injury, a claim may be filed within 2 years after the date of the last payment of compensation or within 2 years after the date of the last remedial attention furnished by the employer; and all rights for remedial attention under this section pursuant to the terms of ári award shall be barred unless a further claim therefor is filed with the division within 2 years after the entry of such award, except that, if payment of compensation has been made or remedial attention has been furnished by the employer under the terms of the award, a further claim may be filed within 2 years after the date of the last payment of compensation or within 2 years after the date of the last remedial attention furnished by the employer. However, no statute of limitations shall apply to the right for remedial attention relating to the insertion or attachment of a prosthetic device to any part of the body,
(emphasis added).
The deputy commissioner’s factual finding that the medical treatment rendered on March 12, 1981, was not furnished “on account of” the injury of November 1979 is not supported by competent, substantial evidence. In Watson v. Delta Airlines, Inc., 288 So.2d 193 (Fla.1973), the claimant had a preexisting knee condition but then suffered a compensable accident injuring his knee in February 1968. He sustained a noncompensable additional injury to the knee in December 1969, and received medical care for his knee in January 1970. The claim was filed in May 1970. The Judge of Industrial Claims found that the Statute of Limitations had run because the medical treatment in January 1970 was related to the intervening, noncompensable injury in December of 1969 rather than the 1968 compensable injury. The Industrial Relations Commission affirmed, but the Florida Supreme Court reversed and stated:
The Judge’s finding that the injury was related solely to the injury of December 18, 1969, is not supported by the record. In fact, the uncontradicted medical testimony is to the contrary. Both doctors testified that the claimant’s current condition is the result of all prior injuries to his left knee, including the non-compensable hamstring. Dr. Kurz-ner, when asked whether he could attribute any of the disability to claimant to the hamstring sprain, stated:
“This young fellow has had a disability of the knee for quite a period of time. He has had minor injuries on several different occasions. It is kind of hard to evaluate which is giving him which. I am being perfectly honest with you, sir.”
288 So.2d at 195.
In the instant case, even assuming that claimant’s back pain of March 1981 was partially caused by the natural progression of his degenerative disc disease, the 1979 injury was also partially responsible since it is uncontradicted that the November 1979 accident aggravated claimant’s preexisting condition and increased his percentage of disability. In other words, the treatment on March 12, 1981, would not be solely due to the preexisting condition. We note that the medical recorder who documented appellant’s clinic visit on March 12, 1981, called the back pain “recurring” and noted that the pain began after no unusual activity. The same medication was prescribed on March 12, 1981, that had been prescribed on November 13, 1979, after the accident. When Dr. Tagliarini was asked whether he prescribed the medication on March 12, 1981, in reference to the industrial accident or to the natural progression of claimant’s back problems, Dr. Tagliarini replied, “I don’t know that I could differentiate.” Dr. Ta- *133 gliarini related claimant’s back problem on March 12, 1981, “to a man who has had previous back problems and has a tendency to recurrent backache.” In light of Watson, we find that the instant record could only support a finding that the medical treatment furnished by employer to the claimant on March 12, 1981, was on account of the injury of November 1979.
The deputy commissioner also erred in stating that notice was required to the employer that the medical treatment of March 12, 1981, was in regard to the injury of November 1979. As this court stated in Seamco Laboratories, Inc. v. Pearson, 424 So.2d 898, 900 (Fla. 1st DCA 1982), “It is the remedial treatment that tolls the statute, not the report of the treatment.”
REVERSED and REMANDED.
MILLS and WIGGINTON, JJ., concur.