SMITH, Judge,
dissenting with opinion.
I dissent. Rather than deal with the somewhat unusual facts in this case and the deputy commissioner’s complex order attempting to adjudicate the issues, the affirming judges revert to a re-reading of Watson v. Delta Airlines, Inc., 288 So.2d 193 (Fla.1973), recede from this court’s pri- or decision in Johnson v. Division of Forestry, 397 So.2d 761 (Fla. 1st DCA 1981), rev. den., 407 So.2d 1103 (Fla.1981), and revive the “2 year gap” theory of Miller v. Brewer Company of Florida, Inc., 122 So.2d 565 (Fla.1960), which Watson found no longer applicable under statutory changes subsequent to Miller.
In stating that Watson “was not concerned with reviving a claim following the running of a statute of limitations ...,” and “[t]he issue of reviving a statute of limitations that had run was not before the [Watson] court ...,” the affirmers simply fail to deal with Watson’s facts and the plain language used by the court in deciding the case. First, the Judge of Industrial Claims’ order under review in Watson dismissed the claim for the express reason that “the Statute of Limitations had run,” citing Miller as authority for the proposition that the payment of compensation and the supplying of medical treatment “did not reactivate the Statute of Limitations.” Secondly, the Supreme Court reversed the order of dismissal on two bases, one being a disagreement on the facts, and the other a disagreement on the law. On the facts, the Watson court found the lower tribunal erred in finding that the medical treatment (commenced January 1970) was related solely to the claimant’s December 18, 1969 non-compensable accident, and thus also erred in concluding that a two-year gap barred the claim filed May 25, 1970, for injuries sustained in his compensable accident occurring on February 1, 1968. On the law, the Watson court held that the lower tribunal was also in error in concluding that the payment of compensation benefits commencing February 25, 1970 (more than two years from the February 1, 1968 injury) did not reactivate the statute of limitations, since his claim was filed on May 25, 1970, thus within two years of compensation voluntarily paid without an award.
The affirmers’ reading of Watson, which I believe to be incorrect, is essential to the conclusion reached by it.[1] Since this diver *64 gence of views is at the heart of this case, I see no need for further elaboration or discussion concerning the decision rendered by the court in Johnson v. Division of Forestry, except to note that Johnson survived an attack in this state’s highest court, and has survived through two sessions of our state legislature, which in the highly volatile field of workers’ compensation law does not need to go unnoticed. Having said this, I concede that we need not await correction of our errors by others, and can and should undo our own mischief. When we do so, however, we ought to stand on solid ground.
I would reverse the order denying the claim for benefits. It is unfortunate that the controversy within this court concerning the matter of receding from Johnson v. Division of Forestry has tended to obscure the pertinent facts relative to Daniel’s claim, and the reasoning followed by the deputy commissioner in deciding it should be denied. Daniel’s 1978 injury was a torn lateral meniscus (cartilage) which required surgical removal. His reinjury to the same knee in November 1981, as found by the deputy commissioner, was caused by the injury received in the 1978 accident; and the medical care received in November 1981, was also found by the deputy to be beneficial to the condition resulting from the 1978 accident and as aggravated by the second accident.[2] The 1982 volleyball accident was diagnosed as a torn medial meniscus, which again required surgical repair. At the time of this surgery, the doctors found that the anterior cruciate ligament had actually been torn in the 1978 accident, and that this was the source of Daniel’s knee problems. Once this ligament is torn, according to the doctors, the knee is unstable with the result that reinjuries occur, so that the injured worker winds up with a tearing of both menisci, and usually with arthritis. The deputy commissioner thus found, consistent with the medical evidence, that the 1978 injury was the underlying cause of the 1982 volleyball injury, and that the volleyball accident and injury would not have occurred but for the 1978 injury. There was also medical evidence that the second operation, and an operation for the reconstruction of the anterior cruciate ligament (which claimant needs but has not received) would have been required even in the absence of the volleyball injury.
Interestingly, neither American nor Fidelity disagrees with this court’s holding in Johnson v. Division of Forestry. American argues that it could only be liable to Daniel, if at all, for the effects of the November 1981 injury, as to which American has fully discharged all its possible liabilities; and further, American asserts that the deputy commissioner did not base his denial of the claim against American on the statute of limitations. Fidelity asserts here that the deputy commissioner in fact did not apply any “two year gap” theory in arriving at his decision.[3] A careful reading *65 of the order under review indicates that these contentions of both carriers are correct. It is also interesting to note that Daniel’s failure to immediately inform his employer of the volleyball injury, which fact is pointed out early in the affirmers’ opinion, is of no great significance here because American’s claims manager was shown to have had knowledge of the 1978 and 1981 accidents, as well as the volleyball injury, at the time he authorized the compensation payments in August 1982. See footnote 4, infra.
Nevertheless, the deputy commissioner, after an exhaustively worded and detailed analysis of the case, erroneously based his decision upon the theory that the actions taken by one carrier (here American) in the employer’s behalf are somehow not binding upon the employer (Holmes Lumber), nor upon a prior carrier (here Fidelity) for the same employer. This theory, which underlies the deputy commissioner’s final ruling, is contrary to the law as announced by the court in Iowa National Mutual Insurance Company v. Webb, 174 So.2d 21 (Fla.1965), and as followed by this court in Johnson, supra, and in the later cases, Bowman v. Food Fair Stores, 400 So.2d 793 (Fla. 1st DCA 1981), and Bassett’s Dairy v. Thomas, 429 So.2d 1356 (Fla. 1st DCA 1983).
Although I would agree with American that it has paid all benefits for which it could be held liable to Daniel, since the undisputed facts are that all effects of the November 1981 accident have long since been fully dissipated, the payment of compensation by American without an award in 1982 under the uncontroverted medical evidence was for a disability causally related to the 1978 compensable injury. The subjective intent of American in making payment (which was on behalf of the employer, not Fidelity, nor American) is immaterial.[4] As appellant’s brief accurately points out, the payment was “on account of such injury” (here the 1978 injury) so as to trigger the employer’s liability on Daniel’s claim subsequently filed under Sections 440.13 and 440.19, Florida Statutes (1977). See, Escribano v. Westinghouse Electric Company, 453 So.2d 130 (Fla. 1st DCA 1984).
The justice and logic of the statutory scheme, as interpreted by Watson and its progeny, has not been refuted by either of the appellees in this case, and is not, to my notion, satisfactorily discredited by the af-firmers’ opinion. If a claim is filed and the claimant receives an adjudication and award, he has received all he is entitled to receive under the law, absent grounds for modification. His claim for modification proceeds under a completely different statute, Section 440.28, Florida Statutes (1977). Absent adjudication and award, a claimant such as Daniel may go along and trust to luck that he will have no further difficulty. As the medical evidence here demonstrated, it was only a question of time before Daniel’s knee gave way again, volleyball injury or no volleyball injury. Meanwhile, he gave up the opportunity to have an adjudication of his condition and an award for any permanent impairment reasonably determinable by medical evidence, and also gave up periodic medical monitoring of the progressive deterioration of his knee as well as medical treatment that could possibly have tolled the running of any two-year limitations period. The carrier, Fidelity, with superior knowledge of the claimant’s rights, and with ample notice of the seriousness of claimant’s 1978 injury and the likelihood of further difficulty at the time it went off the risk in March 1979 (when American began workers’ compensation coverage for the employer), must be charged with knowledge of the possibility *66 of a future payment of compensation or furnishing of medical treatment by the employer through its new carrier, and the potential for further liability on the part of Fidelity. This could have occurred immediately after Fidelity went off the risk, at which time no two-year period had elapsed, or it could have occurred (as it did) somewhat later. Fidelity cannot now be heard to complain that the foreseeable and, in this case, the inevitable has happened. Fidelity is and was charged with notice of the applicable law under which it might become liable for future claims by Daniel. To what extent, if any, Fidelity might claim some prejudice by reason of the employer’s and American’s actions is not a matter of concern to Daniel.[5]
The affirmers’ recession from the Johnson decision is especially grievous in this case. By retroactively reinterpreting Watson, this court deprives an injured claimant of vested statutory benefits he is entitled to claim under the controlling law as it has existed since the Supreme Court’s 1973 Watson decision.[6]
In this dissent, I do not find it necessary to defend the rationale of the Watson decision. If it is incorrect, the Supreme Court of Florida or the legislature ought to change it. This court is not empowered to do so. Whether the Watson court’s interpretation of the significance of the “without an award” language was correct or not is immaterial. One might reasonably disagree with Watson on this point. On the other hand, one might reasonably argue that Miller was wrongly decided, and that the court in Watson merely availed itself of the opportunity to correct the error. The point is that there is and was no statutory mandate for adoption of the “two year gap” theory; but if there had been any doubt, after Watson, and especially after Johnson, as to the effect of the statutory changes subsequent to Miller, the legislature could have spoken. It did not. This court should not. This court should adhere to precedent in this instance.
ERVIN, C.J., and SHIVERS, WIGGIN-TON, NIMMONS and ZEHMER, JJ„ concur.
ON SUGGESTION FOR CERTIFICATION
PER CURIAM.
Upon appellant’s suggestion for certification under Fla.R.App.P. 9.331(a),[1] we certify that the decision herein presents a question of great public importance unresolved by the evenly divided vote upon en banc hearing, to-wit:
IS A CLAIM FOR WORKERS’ COMPENSATION BENEFITS TIMELY WHEN IT IS FILED WITHIN TWO YEARS OF THE LAST PAYMENT OF COMPENSATION OR FURNISHING OF MEDICAL TREATMENT BUT THERE PREVIOUSLY OCCURRED A TWO YEAR PERIOD WHEN NO COMPENSATION BENEFITS WERE PAID *67 OR MEDICAL TREATMENT FURNISHED?
The motion for rehearing is denied.
MILLS, BOOTH, WENTWORTH, JOA-NOS, THOMPSON and BARFIELD, JJ., concur.
ERVIN, C.J., and SMITH, SHIVERS, WIGGINTON, NIMMONS and ZEHMER, JJ., concur in certification and would grant rehearing.

. Miller and Watson appear to have been misread or misapplied in other cases, as indicated in Johnson, 397 So.2d at 763, or, with respect to the Watson decision, possibly overlooked, as in Hunt v. Southland Plumbing, IRC Order 2-3352 (1978), cert. den., 366 So.2d 885 (Fla.1978). Watson was misapplied in Frank M. Murphy v. Rogers, IRC Order 2-2404 (1974), because three prior orders had been entered on the same injury, and the case was therefore not one in *64 which compensation had been paid “without an award." The Industrial Relations Commission, in Byrd v. Acousti Engineering of Florida, IRC Order 2-2668 (1974), corrected the Rogers misapplication of Watson by stating (without reciting facts of the case or further discussing) that "we hereby recede” from the Rogers decision "insofar as it interprets" Watson. Although, as above noted, Hunt v. Southland Plumbing seemed to overlook Watson, examination of that decision shows that the statute of limitations issue was non-dispositive, in that there was a pending claim which the IRC ruled had never been disposed of, and that the mere voluntary acceptance and payment of a permanent disability rating did not terminate the claim.

. The deputy commissioner’s order refers to the medical care rendered in November 1981, as “primary care.” Appellant does not contend that this was “remedial treatment” under the statute, so as to recommence the two year period for filing a claim. This court therefore has not been called upon to determine whether the 1981 medical care was “remedial treatment,” so as to trigger liability as in Barnett v. EMR Telemetry, 396 So.2d 791 (Fla. 1st DCA 1981).

. Appellee Fidelity’s brief, page 3, states in part: “Implicit in the Deputy Commissioner’s compensation order is the recognition of Johnson v. Division of Forestry, 397 So.2d 761 (Fla. 1st DCA 1981). Johnson held that the appropriate test regarding the statute of limitations is not solely whether any two year gap in benefits existed. Appropriately, that was not the test utilized by the Deputy in arriving at his decision. Rather, he properly determined that under the peculiar *65 facts of this case consideration had to be given to the intent of the party that last provided benefits as well as the relative position and interests of American, Fidelity and the employer.”

. Regardless of American’s intent, it is noted that Mr. Hodges, branch claims manager for American, stated in his testimony that at the time he recommended temporary total benefits following the 1982 accident, he believed he knew about the 1978 accident, the 1981 accident and the volleyball injury. That Hodges knew of the volleyball injury is not surprising, since claimant stated the source of this injury when he was sent for medical attention.

. The law contemplates voluntary payments by successor carriers in behalf of a prior carrier, and makes provision for adjustment of claims between carriers. Section 440.42(3), Florida Statutes (1977), provides in part: "[A]nd if one of the carriers voluntarily or in compliance with a compensation order makes payments in discharge of such liability and it is finally determined that another carrier is liable for all or any part of such obligations and duties with respect to such claim, the carrier which has made payments either voluntarily or in compliance with a compensation order shall be entitled to reimbursement from the carrier finally determined liable, and the judge of industrial claims shall have jurisdiction to order such reimbursement; however, if the carrier finally determined liable can demonstrate that it has been prejudiced by lack of knowledge or notice of its potential liability, such reimbursement shall be only with respect to payments made after it had knowledge or notice of its potential liability.”

. This opinion, of course, does not address statutory changes occurring subsequent to the date of the accident in this case.

. A committee note to the cited rule states:
The effect of an en banc tie vote is self-explanatory, but such a vote does suggest that the matter is one which should be certified to the Supreme Court for resolution.