527 So.2d 886 (1988)
TOWER CHEMICAL COMPANY and Florida Farm Bureau, Appellants,
v.
Charles HUBBARD, Sr., Appellee.
No. 87-919.
District Court of Appeal of Florida, First District.
June 22, 1988.
Jeffry J. Branham of Dean, Ringers, Morgan & Lawton, Orlando, for appellants.
Howard G. Butler of Meyers and Mooney, Orlando, for appellee.
ZEHMER, Judge.
The employer, Tower Chemical Company, and its carrier, Florida Farm Bureau, appeal a workers' compensation order ruling that the statute of limitations does not bar Charles Hubbard's claim for continued remedial medical attention. We affirm.
The basic facts are not in dispute. On March 26, 1980, Hubbard sustained a permanent back injury in a work-related accident. The employer and the carrier subsequently agreed to a settlement of his claim *887 except for future medical, which was left open. Dr. Joseph Matthews, an orthopedic surgeon authorized by the employer and carrier, was treating claimant for his back injury. Upon examining claimant in November of 1984, Dr. Matthews found that claimant's back condition had stabilized at a level not requiring active treatment other than two medications he approved for claimant's use. He advised claimant to return on an "as needed" basis.
On July 10, 1986, claimant returned to Dr. Matthews, who remained the authorized physician, for evaluation of his condition. Dr. Matthews testified that the purpose of this visit was to discover whether claimant's condition had worsened or changed, whether a different type of treatment might be necessary to make his condition more comfortable, and whether he needed any active care. Dr. Matthews stated he was particularly concerned with determining whether claimant was suffering from any active nerve root pressure. The examination consisted of taking claimant's history and complaints since the last visit, checking his reflexes and straight-leg raising, discussing his medications with him, and giving him instructions and advice. Claimant advised Dr. Matthews that in early 1986 he had suffered a flare-up of his condition causing acute low back pain. This condition gradually improved, and by the time of the July 1986 examination claimant's condition had returned to its 1984 status. Dr. Matthews stated that he did not have any additional suggestions for changing claimant's treatment unless he suffered another flare-up.
Although the carrier paid Dr. Matthews's bills for both the 1984 and 1986 examinations, on February 7, 1987, it sent Dr. Matthews a letter advising him that it would not pay for any further medical treatment of claimant because the statute of limitations on the claim had expired. Consequently, claimant filed a claim requesting that the deputy commissioner order the employer and carrier to provide continued medical treatment. The employer's notice to controvert asserted the statute of limitations in defense.[1] In the appealed order, the deputy commissioner found "[t]hat the claimant's claim for continued remedial attention is not barred by the statute of limitations" and explained:
I base this finding on the fact that the claimant last received remedial attention by his authorized treating physician, Dr. Joseph Matthews, on July 10, 1986. I accept Dr. Matthews' testimony that the professional services that he rendered to the claimant on that date constituted part of his program of medical attention and treatment and is substantially the same as the treatment and attention that he has been providing the claimant for a number of years. Further, the carrier apparently felt that the professional services rendered to the claimant by Dr. Matthews on July 10, 1986 constituted treatment because they paid Dr. Matthews for those professional services in September of 1986. Florida Statute 440.19(2)(b), which is the statute applicable to this situation, clearly provides for remedial attention rather than specific remedial treatment. To give this statute a different construction would only promote a practice which would involve claimants requesting their physicians give them specific but probably unnecessary treatment to keep their entitlement for continued medical benefits open. This was never intended by the workers' compensation law and it was also never intended that an injured worker's benefits should be barred by the statute of limitations when he seeks out the services of his authorized treating physician for medical attention.
(R. 76-77).
Appellants contend on appeal that (1) the July 1986 visit to Dr. Matthews was merely an examination, not remedial attention contemplated by this statute, and thus was not sufficient to toll the running of the statute *888 of limitations; and (2) the payment for the July 10, 1986 visit does not estop the employer and carrier from asserting the statute of limitations defense. Because we find no error in the deputy commissioner's ruling on the first issue, we have no occasion to reach appellants' second issue.
We fully agree with the deputy commissioner that Dr. Matthews provided remedial attention to claimant on July 10, 1986. Section 440.19(2)(b), Florida Statutes, the statute of limitations applicable to this claim, states:
All rights for remedial attention under this section shall be barred unless a claim therefor which meets the requirements of paragraph (d) is filed with the division within 2 years after the time of injury, except that, if payment of compensation has been made or remedial attention has been furnished by the employer without an award on account of such injury, a claim may be filed within 2 years after the date of the last payment of compensation or within 2 years after the date of the last remedial attention furnished by the employer; and all rights for remedial attention or rehabilitative services under this section pursuant to the terms of an award shall be barred unless a further claim therefor is filed with the division within 2 years after entry of such award, except that, if payment of compensation has been made or remedial attention or rehabilitative services have been furnished by the employer under the terms of the award, a further claim may be filed within 2 years after the date of the last payment of compensation or within 2 years after the date of the last remedial attention or rehabiliative services furnished by the employer.
This section bars a claim for remedial medical attention unless filed within two years of the time of injury, with certain exceptions where specified benefits have been paid or furnished by the employer in the absence of an award or after an award has been made.[2] Under the exception allowing the claim to be filed within two years after the date of the last remedial attention furnished by the employer, the key considerations involve the meaning of "remedial attention" and "furnished by the employer."
In Barnett v. EMR Telemetry, 396 So.2d 791 (Fla. 1st DCA 1981), in determining whether a physician's examination of a claimant constituted remedial attention furnished by the employer within the contemplation of Sections 440.13(3)(b) and 440.19(1)(a), Florida Statutes (1971),[3] we held:
A distinction has been drawn between "examination" and "treatment"; however, such distinction should not be artificially and unrealistically made. [Citation omitted.] To distinguish a "mere" examination from treatment, it is essential to examine not only the actual functions performed by the physician, but also the purpose of the physician's examination. [Citations omitted.] Here, ... . the purpose of claimant's visit with Dr. Padar was not solely and exclusively for evaluative processes. Rather, the clear purpose of the visit, as evidenced by the carrier's letter, was for evaluation and treatment. Here, if claimant's condition had been properly diagnosed, the carrier's letter obviously served as a clear authorization for further remedial treatment. The fact that claimant's condition was not properly diagnosed and that the doctor's ministrations amounted to no more than a "no help" visit does not, in our view, mandate a determination that the medical attention was non-remedial. [Citations omitted.]
396 So.2d at 792, 793. Under this construction of the statute, the statutory exception for furnishing remedial attention is satisfied *889 if the doctor was authorized by the employer to provide continuing medical supervision and treatment of a permanent medical condition caused by the accident and the examination, evaluation and advice was given pursuant to that continuing doctor-patient relationship.
Applying those principles to this case, the facts found by the deputy commissioner are legally sufficient to establish that Hubbard's visit was reasonably necessary to his on-going medical attention by Dr. Matthews, and that the employer furnished such attention in the sense that it authorized Dr. Matthews to see Hubbard for this purpose and paid him for it. Dr. Matthews stated the purpose of the 1986 visit was to discover whether claimant's condition had worsened or changed, whether a different type of treatment might be necessary to make his back condition more comfortable, and whether he needed any active care (R. 39). He stated that he was specifically concerned with determining whether claimant was suffering any active nerve root pressure, and, discovering none, he discussed claimant's medications with him and gave him some instructions and advice on how to manage his condition (R. 36-41). Claimant's medical condition caused by the industrial accident had not become fully resolved but persisted on a permanent basis with periods of exacerbation which could require more active medical treatment. For this reason Dr. Matthews opined, not unreasonably, that periodic follow-up visits were necessary to determine whether directions to claimant concerning changes or continuation of existing treatment were necessary. We hold that the purpose and totality of circumstances surrounding claimant's 1986 visit fit within the meaning of remedial attention as used in Section 440.19(2)(b). See Barnett v. EMR Telemetry, 396 So.2d 791.
We do not agree with the employer and carrier that Gonzalez v. Allure Shoe Corporation, 160 So.2d 703 (Fla. 1964), mandates reversal in this case. In Gonzalez claimant sprained her wrist in a work-related accident and was sent by her employer to a medical clinic, which she visited the day of the accident and the day afterward. She did not return to the clinic until eighteen months later, at which time the clinic physician instructed her to soak and massage the arm and take aspirin. The physician did not charge the claimant for this last visit. Holding that this incident was insufficient to toll the running of the statute of limitations, the court stated:
We do not feel that under the facts of this case instructions to soak an arm in hot water and to swallow aspirin, which can be obtained in vast quantities in innumerable stores without restriction or prescription, constitutes a process that can be dignified as such medical treatment as was contemplated by the legislature when Chapter 440 was enacted.
160 So.2d at 705. It must be noted, however, that the supreme court further explained its holding as follows:
Moreover, it does not appear that the suggestions of the physician, made at the later consultation, during the two-year limitation period, could logically be considered to have been "treatment furnished by the employer" as the law requires. To get to such a conclusion it would have to be reasoned that when the employer arranged for the original visit to the clinic there was not only a manifestation that treatment was then being furnished by it but that this element could be projected to the later visit of which the employer was ignorant hence satisfying the condition that the statute would be tolled upon the furnishing of treatment by the employer. That route is one we cannot follow.
160 So.2d at 705. The supreme court did not hold simply that instructions to take aspirin and soak an arm may, as a matter of law under the statutory language, never constitute furnishing remedial attention;[4] *890 rather, it clearly held that this unauthorized visit after eighteen months, without the employer's knowledge, and for which the doctor made no charge, did not amount to the furnishing of "medical treatment" by the employer in the sense required for tolling the statute of limitations.
Gonzalez is clearly distinguishable from the case now before us. In Gonzalez, the claimant had no permanent medical condition which required continued monitoring and treatment by an authorized physician, nor did the employer authorize the doctor to provide further medical treatment. Furthermore, the employer did not know of the visit, so there was no basis for finding that the employer furnished such treatment. In the instant case, on the other hand, Hubbard had been seeing Dr. Matthews as part of his ongoing medical supervision for a permanent medical condition caused by the industrial accident. The employer knew that Dr. Matthews would provide remedial attention from time to time, for it had authorized Dr. Matthews to do so, and the doctor had not been deauthorized at the time of the 1986 visit. Here, to paraphrase the supreme court's language in Gonzalez, Dr. Matthews's examination, evaluation, and directions to continue existing treatment "are logically considered to be remedial attention furnished by the employer as the law requires."
This result clearly is consistent with the purpose and policy of Chapter 440. For example, section 440.20(12)(a), Florida Statutes (1979), prohibited these parties from settling future medical benefits by washout because it is the policy of the act to indefinitely preserve on a continuing basis the employer's obligation to provide reasonably necessary remedial treatment for permanent medical conditions. Such treatment most assuredly can, as Dr. Matthews testified, consist of continuing medical supervision involving the physician's examination from time to time, evaluation of claimant's condition, and recommendations for continuing or changing medication and physical activity previously prescribed by the doctor. Recommending conservative or minimal treatment of an injury while the natural healing processes are allowed to take place is often the best medical treatment a physician can provide to a patient. As Dr. Matthews pointed out at his deposition, sometimes the only treatment a physician can give a patient is "good advice."
We decline, therefore, to adopt a construction that would limit the statutory term "remedial attention" to active "medical treatment" of a specified nature during a particular two-year period and thereby allow controlling importance to questions such as whether the doctor prescribed Darvon or merely suggested that claimant take aspirin. While the character of the treatment may be significant in determining whether remedial attention was in fact provided in cases where a claimant not under continuing care of an authorized physician seeks medical treatment after more than two years, it does not have controlling significance in cases such as this. So long as the doctor is authorized to provide follow-up care and visits to the doctor for continuing supervision, and evaluation for possible change in treatment is reasonably necessary from a medical standpoint, such visits constitute "remedial attention" under the statute. We must presume, as did the deputy commissioner, that the legislature chose the term "remedial attention" deliberately and with the understanding that it was different from "medical treatment." Otherwise, remedial attention for permanent medical conditions having a proven prognosis of future degenerative changes known to require further medical attention might, by pure happenstance, become barred by section 440.19(2)(b) if the expected degenerative change failed to require active medical treatment within a particular two-year period. We do not ascribe to the legislature any intention to create a statute of limitation that becomes operative purely by happenstance; it has clearly provided a two-year time limitation that only commences to run after the employer has completed fulfilling its obligation to provide the benefits due the claimant under *891 the law. Cf. Wood v. McTyre Trucking Co., 526 So.2d 739 (Fla. 1st DCA 1988).
AFFIRMED.
WENTWORTH and BARFIELD, JJ., concur.
NOTES
[1] The employer alleged that "remedial medical treatment had not been rendered nor deemed medically necessary, by the authorized physician for the Workers' Compensation injury, since November 20, 1984. As such, the 2 year Statute of Limitations had expired pursuant to F.S. 440.19."
[2] The "wash-out" settlement agreement and order approving it are not included in the record on appeal, so we have no way of knowing the date of the settlement or whether the medical services being rendered by Dr. Matthews were pursuant to an award. Lack of such information does not, however, make any difference under our holding in this case.
[3] Chapter 79-40, § 15, Laws of Fla., moved Section 440.13(3)(b), in substantially the same form, to Section 440.19(2)(b) (the statute at issue in the case sub judice).
[4] Indeed, in light of today's widely publicized medical knowledge concerning the use of aspirin in treating heart conditions, would a deputy commissioner and this court be required by the Gonzalez case to hold that a physician's direction to take one aspirin each day as treatment for a heart condition be legally insufficient to constitute medical treatment? We have no doubt it would not.