580 So.2d 263 (1991)
SPOTMASTER CLEANERS and Zurich-American Insurance Companies, Appellants,
v.
SPECIAL DISABILITY TRUST FUND, Appellee.
No. 90-1214.
District Court of Appeal of Florida, First District.
May 14, 1991.
Rehearing Denied June 21, 1991.
*264 Steven Kronenberg of Adams, Kelley, Kronenberg & Kelley, Miami Lakes, for appellants.
Mary E. Ingley of Special Disability Trust Fund, Tallahassee, for appellee.
WOLF, Judge.
Spotmaster Cleaners and Zurich-American Insurance Company (E/C) appeal from a final order of the judge of compensation claims (JCC) which denied the E/C's claim for reimbursement from the Special Disability Trust Fund (Fund). We find that the JCC's determination is in error, but also find that the issue is one of first impression and great public importance. We, therefore, certify the question contained herein to the supreme court.
Employee, Richardson, who had a preexisting permanent impairment, sought compensation benefits in connection with his alleged inability to work following repeated exposure to chemicals used in the dry cleaning profession. The E/C originally controverted the employee's claim, but the parties ultimately agreed to a washout settlement pursuant to section 440.20(12)(b), Florida Statutes (1989). The E/C paid a lump sum of $144,000 in exchange for release of their liability. The E/C sought reimbursement from the Fund pursuant to section 440.49(2)(b)3., Florida Statutes (1989), alleging that a portion of the settlement constituted excess permanent disability compensation (compensation in excess of the first 175 weeks).[1]
The claim for reimbursement by the E/C was controverted by the Fund. The Fund raised the following defenses:[2] (1) The *265 Fund had no statutory authority to reimburse the amount paid by way of a totally controverted washout; (2) even assuming the Fund did have authority, the E/C had paid no excess permanent compensation which was reimbursable by the Fund; (3) the evidence failed to establish that an employer reached an informed conclusion that the employee suffered from a preexisting permanent condition as required under section 440.49(2)(f).[3]
The only evidence concerning the reasonableness of the settlement or allocation of the values within the settlement was the introduction of the settlement document itself and the testimony of the E/C's adjuster. The adjuster testified, and the washout settlement itself reflected, that $120,000 of the settlement represented compensation, and $24,000 was for medical expenses. The adjuster further testified that prior to the time of the washout, the adjusted value of the case was $258,000 for lost time. Future medical expenses were valued at between $100,000 and $150,000; unpaid medical bills were $8,865. He also stated that the potential attorney's fee liability would be between $54,000 and $62,070.
After the hearing, the JCC held:
4. The Fund has no authority to reimburse totally controverted settlements for the following reasons:
a. It is not an enumerated situation under Section 440.49(2)(c), (d) and (e) where Fund reimbursement is operative.
b. The Fund is authorized to reimburse only those benefits which the employer/carrier are required to pay under Chapter 440. The controverted settlement is not a required payment.
5. Even assuming there is authority under Section 440.92(2) to reimburse a Section 440.20(2)(b)1. wash-out settlement, the Employer/Carrier have failed to prove payment of any excess permanent compensation as required under the statutory provisions. The Fund is intended to protect employers from liability for excess compensation and medical expense as a result of merger. Section 440.49(2)(a). In this particular totally controverted settlement it cannot be determined if any portion of the amount represents excess liability.
The appellant argues that (1) the JCC erred in finding that none of the settlement amount represented excess permanent compensation; (2) section 440.49(2)(c)3. dealing with excess compensation does not contain the phrase "required payment" or, in the alternative, that a settlement is, in fact, a required payment; (3) they have met all the statutory requirements for reimbursement, including the requirement of paying excess permanent compensation as a portion of the settlement represented compensation; and (4) the statute should be construed to include reimbursement for settlements so as to effectuate the public policy in favor of settlements.
While we find no merit in claimant's argument concerning public policy in favor of washout settlements in workers' compensation cases,[4] we do find merit in the other arguments.
There was no competent evidence to support the judge's determination that none of the settlement represented excess compensation. The judge found that since the total for medical bills plus 175 weeks of compensation and attorney's fees exceeded $200,000, "no part of the settlement represents excess permanent compensation." The judge cites no authority as to why the dollars from the settlement should first be credited against other benefits prior to applying a portion to exposure for excess compensation. The Fund argues that the wording in section 440.49(2)(c)3., "the employer shall, in the first instance, pay all *266 benefits provided by this chapter," supports the JCC's method of calculation. When the quoted language is read in context, however, it is clear that the purpose of the statute is to assure that an employer or carrier will not delay payment to an employee until after payment from the Fund, but rather will seek reimbursement from the Fund after the employee is paid. The statute has nothing to do with the order in which particular benefits will be paid.
The testimony of the adjuster concerning the value of compensation within the settlement was unrefuted. In addition, there is no indication that the Fund challenged the reasonableness of the settlement or its allocation. See Special Disability Trust Fund v. Trail Tire Center, 453 So.2d 462 (Fla. 1st DCA 1984) (indicates Fund entitled to challenge reasonableness of settlement in reimbursement proceedings). See also Special Disability Trust Fund v. Kemp & Guest Roofing, 379 So.2d 404 (Fla. 1st DCA 1980), cert. denied, 388 So.2d 1118 (1980). Based upon these factors and the evidence presented, there are two acceptable alternative methods of calculating excess compensation which could have been considered by the JCC.
The adjuster's unrefuted testimony was that $120,000 of the settlement represented compensation. In light of the determination that $46,662 represented 175 weeks of compensation, the remainder of $73,338 could have been found to represent excess compensation. Because the adjuster's testimony also reflected maximum potential losses within categories of benefits, the JCC could have accepted that testimony and determined the value of excess compensation by allocating the settlement based on the ratio of maximum potential losses.[5] Under either method, a portion of the settlement would represent excess compensation; therefore, the JCC's determination that no portion of the settlement represented wage loss was in error.
We are also unimpressed with the JCC's holding and the Fund's argument that a settlement does not represent a "required payment." First, section 440.49(2)(c)3., Florida Statutes, does not contain the "required payment" language which is contained in (c)1. and (c)2. of the statute. In addition, an employer or carrier has a legal obligation to comply with a JCC-approved washout settlement which requires payment of certain benefits. Payments pursuant to such a settlement are required payments. Acceptance of the Fund's argument that a settlement is not a required payment would indicate that the Fund would never be held responsible for payment in cases involving a settlement. This result was clearly not contemplated by this court. Cf. Special Disability Trust Fund v. Trail Tire Center, 453 So.2d 462 (Fla. 1st DCA 1984) (court held Fund had ability to challenge reasonableness of washout settlement).
Finally, the Fund argues that section 440.49(2)(c), (d), and (e), Florida Statutes, specifically states the circumstances when the Fund is authorized to reimburse a carrier, and because a washout settlement is not one of the enumerated situations, the Fund cannot reimburse the E/C. The statute does, however, authorize reimbursement for "permanent total disability benefits in excess of 175 weeks." In the instant case, it was demonstrated that portions of the settlement represented excess permanent disability benefits. We find that in such a situation, reimbursement is authorized.
We find that the situation in the instant case is one which may arise frequently. In addition, because there is no prior ruling on reimbursement in settlement cases, we certify the following question as one of great public importance:
WHETHER AN EMPLOYER/CARRIER, THAT HAS ENTERED INTO A TOTALLY CONTROVERTED WASHOUT SETTLEMENT PURSUANT TO SECTION 440.20(12)(b)1., FLORIDA STATUTES *267 (1989), AND HAS PROVEN THAT A PORTION OF THE SETTLEMENT CONSTITUTES PERMANENT DISABILITY COMPENSATION IN EXCESS OF THE FIRST 175 WEEKS, IS ENTITLED TO REIMBURSEMENT FROM THE SPECIAL DISABILITY TRUST FUND?
We reverse and remand with directions to conduct further proceedings consistent with this opinion.
SMITH, J., concurs.
BARFIELD, J., concurs with written opinion.
BARFIELD, Judge, concurring.
I concur in the certification of the question presented by this case and in the majority opinion, but with serious reservations.
The settlement in this case can be effected only because the employer denies a compensable accident or injury occurred. The legislature expressed its intent in section 440.49(2)(a) that the disability trust fund protect employers from excess liability for compensation and medical expense. It appears on the surface to be incongruous that there is no determination of liability for compensation while at the same time liability exists for purposes of computing reimbursement. While the legislature authorized a complete washout upon denial of compensability, it required that the Judge of Compensation Claims determine the propriety of the proposed settlement, and if acceptable to the judge, the settlement is to be approved and authorized by the judge in a "compensation order." By legislative transformation, we have a compensation mirage appearing in an employment desert barren of compensability.
Since we are remanding this case to the Judge of Compensation Claims to determine the appropriate allocation reimbursable under section 440.49, I suggest that the judge consider what portion of the settlement should be allocated to the attorney fees for the claimant when considering the other aspects of the options under the formula suggested by the majority. We cannot overlook that the washout settlement requires that the claimant pay his own attorney fees.
NOTES
[1] The parties stipulated that 175 weeks of compensation was worth $46,682.
[2] Prior to the hearing on the E/C's entitlement to reimbursement, the E/C and the Fund stipulated to the existence of a preexisting permanent impairment, that the permanent impairment was sustained by the claimant as a result of the instant accident, and that merger had occurred. Thus, these elements did not have to be proven by the E/C.
[3] The JCC did not reach the issue of the informed conclusion by the employer. This issue will have to be dealt with on remand.
[4] See Tower Chemical Co. v. Hubbard, 527 So.2d 886, 890 (Fla. 1st DCA 1988); Great Bay Distributors v. Everett, 513 So.2d 187 (Fla. 1st DCA 1987); Musgrove v. Children's Home Society, 573 So.2d 100 (Fla. 1st DCA 1991).
[5] For example, if the potential value of medical benefits was $3.00 and the potential value of wage-loss benefits was $2.00, the settlement could be allocated on a 3:2 basis between these two categories.