WIGGINTON, Judge.
This appeal by the employer/self-insured (employer) raises the fundamental issue *1330 concerning the extent of an employer’s duty to provide the correct benefits to the person entitled to those benefits. Although we decline to adopt a “bright line” rule applicable to that duty, we do hold that whatever may be the length beyond which an employer need not go in providing benefits, in the instant case the record supports the deputy’s finding that the employer did not go far enough.
Karen Manis was the first wife of the employee, Carl Manis, killed in an industrial accident on November 12, 1980, and the mother of his two children. Nadine Manis was Carl’s second wife and his widow.
The original hearing on this claim was held in April, 1981. An agreement was reached between Karen and Nadine to divide the death benefits which were to be paid by the employer pursuant to section 440.16, Florida Statutes (1979). An order was entered by a deputy commissioner awarding $105.50 per week to Karen as mother and natural guardian of the two children, and the same amount per week to Nadine, as widow.
It is the business practice of the employer to periodically check the eligibility status of all beneficiaries on death claims, section 440.16(2), by employing a private investigative agency on an annual basis after entitlement to benefits is determined. Additionally, approximately every six months the employer places a telephone call to the beneficiary in an effort to confirm continuing entitlement. Thus, in the instant case, in June, 1981, an agency was employed by the employer to follow up on information received by the employer indicating that Nadine was living with a man in Polk County, Florida. The agency reviewed the courthouse and marriage license bureau records of that county, and conducted periodic surveillance. The agency’s report concluded that Nadine had not remarried and there was nothing to indicate that she had plans to remarry. It was later discovered that the man she was living with turned out to be her 87-year old father.
At this same time, the employer employed another investigative agency to check the courthouse records in Folkston, Georgia, where Nadine and the deceased were originally married. There was no evidence discovered there to support termination of benefits.
Following these investigations in June and July, 1981, numerous phone calls were allegedly made by the employer’s personnel to confirm Nadine’s eligibility. On September 2, 1982, Nadine sent a letter to the employer directing that it deposit her benefit checks directly into the Landmark Bank of Brevard County, Florida. Following receipt of this letter, the employer contacted the bank to confirm that the account was in Nadine’s name, but did not examine the public records of that county. In the meantime, Nadine contacted the employer to assure it that she had not remarried and had no intention of remarrying.
In April, 1983, the employer hired a third investigative agency. After contacting a number of individuals who lived near Nadine’s residence, the agency concluded that she had not remarried and had no intention of remarrying. Following that investigation, the employer called Nadine in July to confirm eligibility. She denied having remarried.
In February, 1984, the employer again employed the agency. Again, the conclusion was that Nadine had not remarried. The employer followed up on that conclusion by a phone call to Nadine to confirm her status. She informed the employer that she was planning to marry in March (she later recontacted the employer to change that date to April or May). The employer immediately rehired the investigative agency to conduct a supplemental investigation of Nadine’s neighborhood. Despite the neighbors’ lack of cooperation, due to their apparent awareness by then of the reasons for the investigation, the agency concluded that Nadine had not remarried, but had been dating an individual who she planned to marry. Public records were not checked.
On March 2, 1984, the employer received a letter from Nadine enclosing a marriage certificate indicating that she had remar *1331 ried in Brevard County on August 22, 1982. Immediately, the employer terminated Nadine’s benefits and commenced payment of full death benefits to Karen on behalf of the two minor children.
On April 5, 1984, the employer petitioned for a change of payment of death benefits. At the hearing, on Karen’s motion, the deputy commissioner requested that evidence be presented regarding retroactive payment of benefits to the date Nadine remarried. At the conclusion of the hearing, the deputy ordered that the entire death benefit be paid to Karen beginning February 29, 1984, when the employer determined that Nadine was no longer eligible.
Following the separate hearing on Karen’s motion, the deputy found that the benefits paid to Nadine since August 22, 1982, in the amount of $8,394.76, had been improperly paid. Specifically, the deputy found:
The payment of said benefits [to Karen] shall be retroactive to August 22, 1982, the date of remarriage of NADINE MANIS. In making the payment of these benefits retroactive, the Deputy Commissioner specifically finds that the burden is on the employer/self-insured to pay the proper person the proper benefits. Implicit in this burden is the duty to investigate what is to be properly paid and to whom the benefits are to be paid. The intention to pay the proper benefits is, in itself, not sufficient to meet the requirements of the Florida Workers’ Compensation Law.
The employer has sufficient monies and facilities available to it to investigate the propriety of its payments and the duty therefore is placed upon them. Since, the two minor children have a clear entitlement to receipt of these benefits from the date of remarriage of NADINE MANIS, these minor dependants have no burden to establish such entitlement. On the other hand, the employer has the duty to pay the benefits to the proper party. In making this order, the Deputy Commissioner is aware that the employer and the minor dependents are all innocent parties but, among innocent parties, the employer must bear the burden of appropriate payment as outlined above. It is apparent from the testimony that the employer hired outside investigators who did not accomplish the job of determining the propriety of the payment of benefits of NADINE MANIS since August 22, 1982. Had they checked the public records in Brevard County in the fall of 1982, they would have found evidence of the remarriage of NADINE MANIS and the overpayment of $8,394.76 to NADINE MANIS would not have been made.
Accordingly, the deputy held that the employer owed Karen those benefits improperly paid. From that order, the employer brings this appeal.
The gist of the employer’s argument is that it should not be required to pay retroactive benefits, which were previously paid to another, in the face of that other recipient’s continuing fraud, especially where the employer had conducted a good faith investigation as to the eligibility of recipient. The employer maintains that it should be held to no greater standard regarding thoroughness of investigation than that required of an employer/carrier in order to avoid imposition of attorney’s fees for bad faith, under Florida Erection Services, Inc. v. McDonald, 395 So.2d 203, 211 (Fla. 1st DCA 1981).
We agree with the employer that it should not be held to a greater standard than that set forth in McDonald. However, we point out that the employer was not held to such a standard in the instant case. In his order, in regard to the issue of attorney’s fees, the deputy specifically found that the employer “has not conducted itself in anyway [sic] exhibiting bad faith .... ” As we stated at the beginning of this opinion, we are not creating a new rule by which to judge an employer’s conduct in distributing its benefits; whether an employer is to be penalized for alleged misconduct in that regard is a question to be determined under the bad faith provi *1332 sion of section 440.34, and the guidelines set forth in McDonald.
In the instant case, the deputy was solely concerned with getting the proper benefits to the proper parties. Under section 440.-20(1), it is the employer’s duty to provide benefits promptly and directly to the person entitled thereto. As we recently held, the 1979 Workers’ Compensation Act is characterized as “quintessentially an employer-carrier monitored system, rather than a claimant-attorney monitored system.” Barnes v. PCH Parker, 464 So.2d 1298 (Fla. 1st DCA 1985). Here, the deputy simply made a finding of fact that the employer did not do enough to carry its burden to monitor the system. The deputy did not, thereafter, want to shift the burden of loss to Karen who could ill-afford to await the outcome of a suit brought by the employer against Nadine, in order to be reimbursed monies to which she was originally entitled by statute.
Although it is speculative that had the employer checked the Brevard County records it would have discovered proof of Nadine’s status, since the marriage license in the record does not indicate that it was filed as a matter of public record, the evidence does support the deputy’s finding that the employer, through its investigators, “did not accomplish the job of determining the propriety of the payment of benefits” to Nadine. We find it peculiar that the employer would check the public records of two counties and not the third, i.e., Brevard, to which Nadine herself directed the employer when she requested her benefits be deposited directly to her account in a bank located in that county in September, 1982, less than a month after she had remarried. After its initial surge of investigative activities into the public records in 1981, the employer apparently abandoned its normal procedures and adopted a more casual approach.
By our holding today, we caution that we are not placing an absolute burden on the employer to investigate and “monitor the system.” We recognize that there may arise circumstances so obfuscated by fraud or collusion that nothing short of clairvoyance on the employer’s part would reveal the truth. However, the evidence herein would show that this is not such a case. Accordingly, the deputy’s order is in all respects AFFIRMED.
BOOTH AND BARFIELD, JJ., concur.