509 So.2d 1264 (1987)
MONROE FURNITURE COMPANY and Aetna Casualty & Surety, Appellants,
v.
John BONNER, Appellee.
No. BN-29.
District Court of Appeal of Florida, First District.
July 10, 1987.
Rehearing Denied August 6, 1987.
*1265 Claire L. Cours and Richard G. Davis of Fowler, White, Gillen, Boggs, Villareal and Banker, Tampa, for appellants.
George J. Adler, P.A., Orlando, for appellee.
ERVIN, Judge.
The appellant employer/carrier (e/c) appeals the final order of the deputy commissioner (dc), arguing that Section 440.15(3)(b)3.a., Florida Statutes (1986), statutorily bars an award of wage-loss benefits for the period following the claimant's release from incarceration. We find that the dc made a reasonable interpretation of the statute and affirm.
The claimant suffered a compensable back injury while working for the employer in 1981. Following surgery, he was released to a light duty work status and reached maximum medical improvement (MMI) with a ten percent permanent impairment as of April 14, 1982. The claimant then conducted an unsuccessful job search until February 6, 1983, at which time he was convicted and incarcerated on felony charges. Upon release from prison on May 9, 1985, the claimant again conducted a job search and was unsuccessful in finding employment until July 31, 1985. The dc awarded wage-loss benefits for the periods both before and after claimant's incarceration, or from December 5, 1982 through February 6, 1983, and from May 9, 1985 through July 31, 1985, but denied them for the period of time that claimant was incarcerated and therefore unable to conduct a work search.[1]
The e/c contends that the award of wage-loss benefits for the period following the claimant's incarceration is improper under Section 440.15(3)(b)3.a., which provides:

*1266 3. The right to wage-loss benefits shall terminate:
a. As of the end of any 2-year period commencing at any time subsequent to the month when the injured employee reaches the date of maximum medical improvement, unless during such 2-year period wage-loss benefits shall have been payable during at least 3 consecutive months;
The e/c argues that because the claimant had gone two years without collecting at least three consecutive months of wage-loss benefits, he is therefore precluded from receiving wage-loss benefits under the terms of the statute. We disagree.
The interpretative gloss which the e/c places upon the above statutory subsection is that if a claimant fails to establish his entitlement to wage-loss benefits for any reason, he cannot, for purposes of the statute, be considered as one for whom "wage-loss benefits shall have been payable." One's entitlement to wage-loss benefits under section 440.15(3)(b)1 is determined by comparing the amount of income a claimant is able to obtain after reaching MMI with his pre-injury earnings. The purpose of the subsection is to compensate for the injury, while not overcompensating a claimant who is able to secure adequate earnings.[2] A reasonable interpretation of the statutory language, referring to benefits "payable", found in section 440.15(3)(b)3.a.  although most assuredly not the only interpretation  is that subsection (3)(b)3.a., when considered in pari materia with the provisions of subsection (3)(b)1, permits termination of wage-loss benefits to occur only if the claimant has demonstrated a capacity to earn as much as or more than his pre-injury earnings, and not when, due to circumstances beyond the claimant's control, he is unable to collect benefits.
In the present case, wage-loss benefits were not paid to the claimant for three consecutive months of the two-year statutory period, because his incarceration necessarily precluded any job search. If we were to approve an interpretation of the statute disentitling a claimant from his or her right to seek wage-loss benefits in any instance in which a claimant fails to establish that wage-loss benefits were payable (in the sense that a claim therefor was properly perfected) for three consecutive months of the two-year period following the claimant's achievement of MMI, the effect of such a construction would be to penalize any claimant who voluntarily (e.g., through some unauthorized schooling or rehabilitative program), or involuntarily (e.g., through subsequent unrelated injury or incarceration), was temporarily removed from the job market.
In our judgment if we were to approve the interpretation advanced by the appellant, such a construction would be fraught with grave constitutional implications.[3] It would in effect deny a claimant any relief without a viable alternative remedy. Happily we need not reach the constitutional concerns attending any such interpretation. It is our responsibility to construe statutes in such a manner as to effectuate their constitutionality. See City of Clermont v. Rumph, 450 So.2d 573, 576 (Fla. 1st DCA 1984).
We recognize that the above construction may not be consistent with the legislative *1267 purpose. As originally enacted by Chapter 79-40, § 10, Laws of Florida, section 440.15(3)(b)3. provided that an employee's right to wage-loss benefits would terminate upon the occurrence of four events, whichever came first: the expiration of the two-year period following the worker's attainment of MMI, subject to the exception under consideration, or 350 weeks after the injured employee reaches MMI, if his injury occurred before July 1, 1980, or 525 weeks thereafter if the injury occurred after July 1, 1980, or, finally, when the worker reaches age 65.[4] The Preliminary Draft of the Legislative Joint Committee's Recommendations explains the above limitations as "an attempt to relieve the high administrative costs that would result if all permanent partial disability cases remain open indefinitely." Indeed, cost savings appears to be the primary motivation behind the adoption of the 1979 amended act: "The overall goal was to reduce costs, in the form of premiums, to the employers of the state." 7 Fla.St.U.L.Rev. at 650. Regardless of how laudable a cost-efficient workers' compensation system may be, a system which fails to provide reasonable alternatives to the termination of wage-loss, if circumstances beyond the worker's control preclude him from conducting an adequate work search or otherwise establishing his entitlement to wage-loss benefits, is, as previously observed, fraught with serious constitutional impediments.
Accordingly, we conclude that section 440.15(3)(b)3.a., which terminates the right to wage-loss benefits after the passage of the requisite two-year statutory period unless during such time wage-loss benefits were payable for three consecutive months, can mean only that such benefits will be terminated if during the three-month term the worker's post-injury income equals or exceeds his pre-injury income. In so holding, we do not say that the employee's burden of establishing his entitlement to wage-loss in a given case, by failing to conduct a job search or otherwise, is now lessened. We say only that in order for the statutory limitation of section 440.15(3)(b)3.a. to apply, the evidence must disclose that wage-loss benefits were not payable solely because of the amount of income received by the worker, and not for any other reason.
The e/c's second issue, that the claimant's inability to secure employment following his release from prison was due to his criminal background, and not his physical limitations, is unsupported by the record.
AFFIRMED.
SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] Appellant did not appeal the denial of wage-loss benefits sought during the time of his incarceration. As this is not an issue before us, we do not reach the propriety of that denial.
[2] "Since the basic concept of workers' compensation is to partially compensate a worker for loss of wages caused by a work-related injury, payments are not intended to equal wages because to do so would encourage malingering rather than provide an incentive to return to work." Sadowski, Herzog, Butler, and Gokel, The 1979 Florida Workers' Compensation Reform: Back to Basics, Fla.St.U.L.Rev. 640, 651 (1979) (footnote omitted).
[3] Following the submission of the initial briefs of the parties, addressed to the statutory bar of section 440.15(3)(b)3.a., we asked the parties to brief and orally argue the constitutionality of the statute, directed specifically to the questions of whether the statute has the effect of barring one's right to access to courts, or whether it implicates either the due process or equal protection clauses of the United States or Florida constitutions. After considering the constitutional questions, we have determined not to address them, deciding instead to place an interpretation on the statute, as above indicated, which avoids any constitutional determination.
[4] The age requirement was deleted by the 1983 legislative session. See Ch. 83-305, § 5, Laws of Fla.