526 So.2d 739 (1988)
Thomas WOOD, Appellant,
v.
McTYRE TRUCKING CO., INC. and Aetna Life & Casualty, Appellees.
No. 87-1233.
District Court of Appeal of Florida, First District.
May 27, 1988.
*740 George J. Adler, P.A., Orlando, for appellant.
Henry T. Wihnyk of Conroy, Simberg & Lewis, P.A., Hollywood, for appellees.
SHIVERS, Judge.
In this workers' compensation case, claimant appeals from an order denying his claim for benefits, entered on the ground that all claims were barred by the statute of limitations. We reverse.
Claimant, a 42-year-old male, suffered a compensable injury to his back on March 23, 1981. In late 1981, claimant moved to Deland, Florida. After claimant's move, the employer/carrier (E/C) authorized Dr. Huster, an orthopedist in Deland, as claimant's treating physician. Claimant first saw Dr. Huster on January 4, 1982, at which time claimant was assigned an impairment rating of 10% of the body as a whole. On March 5, 1982, claimant returned to see Dr. Huster with increased symptoms which necessitated lost time at work. He saw Dr. Huster again on March 26, 1982, April 23, 1982, and July 8, 1982. Dr. Huster testified that claimant was working again on a regular basis by the time of his July 8, 1982, visit. Claimant's next visit to Dr. Huster took place on June 12, 1984. At that time, Dr. Huster examined claimant and determined that claimant had reached maximum medical improvement (MMI). He also changed claimant's permanent impairment rating to 15% of the body as a whole. Dr. Huster stated that claimant was motivated to go back to work but that claimant would have trouble from time to time if he tried to overdo it. Dr. Huster stated that claimant would continue to need intermittent supportive care.
According to the Pre-Trial Stipulation, the E/C paid claimant temporary total disability (TTD) benefits from March 27, 1981, *741 until December 2, 1982. After claimant's visit with Dr. Huster on June 12, 1984, claimant received a letter dated June 25, 1984, advising claimant of the necessity of filing wage loss forms. Although TTD benefits were discontinued on December 2, 1982, claimant was not advised of his possible entitlement to either temporary partial disability (TPD) or regular wage-loss benefits until the letter of June 25, 1984.
Claimant filed a claim for benefits on May 12, 1986. Additionally, wage-loss forms covering the period from October 19, 1982, to April 30, 1986, were sent by claimant to the E/C in a letter dated June 5, 1986. Following a hearing on the claim for benefits, the deputy commissioner (DC) entered an order finding that claimant's visit to Dr. Huster on June 12, 1984, was for an examination only and did not constitute remedial attention. The DC determined that the last date of authorized remedial medical attention was claimant's visit to Dr. Huster on July 8, 1982. Because claimant filed his claim for benefits more than two years after July 8, 1982, the DC denied all claims and dismissed the case finding that the two-year statute of limitations set forth in section 440.19(2), Florida Statutes (1981) had run. The DC also suggested that claimant's right to wage-loss benefits had terminated under section 440.15(3)(b)3.a., Florida Statutes (1981).
If a claimant who has previously been entitled to TTD benefits is determined to be able to work, but has not yet reached MMI, the claimant is possibly entitled to TPD benefits. Holiday Care Center v. Scriven, 418 So.2d 322 (Fla. 1st DCA 1982). In Scriven, the employer terminated TTD benefits after the claimant had been released to work but before the claimant had reached MMI. At that time, the employer did nothing to assist the claimant in initiating a claim for TPD benefits. The court held that:
The carrier was on notice during that period that, although total disability benefits were no longer due, the worker might be entitled to partial disability benefits... .
In these circumstances the employer's duty was at the very minimum to provide the still healing ... worker with forms for use in furnishing information pertinent to possible temporary partial disability benefits. Fla. Admin. Code R. 38F-3.19.
Id. at 327. Rule 38F-3.19 obligates the E/C to furnish forms for TPD benefits to the claimant when the claimant, prior to MMI, returns to a partial wage-earning capacity.
Furthermore, section 440.185(10), Florida Statutes (1981) provides that "[t]he division shall require by rule that the employer inform a worker who suffers a permanent impairment of his possible entitlement to wage-loss and other benefits and of the worker's obligation to report a claimed wage loss." As held by this court in the case of Gall Silica Mining Co. v. Sheffield, 401 So.2d 1169, 1170 (Fla. 1st DCA 1981):
The legislature very explicitly put the burden of notifying the worker of his obligation to report a claimed wage loss on the division and the employer. Despite the division's apparent failure by rule to require a comprehensively informative notice, the self-executing compensation scheme requires the employer to advise the worker of his obligation to report a claimed wage loss. We decline to forfeit a claimant's right to valuable benefits on the ground that he failed to meet statutory deadlines the employer should have brought to his attention but did not.
"[T]he 1979 Workers' Compensation Act is characterized as `quintessentially an employer-carrier monitored system, rather than a claimant-attorney monitored system.'" Clay Hyder Trucking Lines, Inc. v. Manis, 471 So.2d 1329, 1332 (Fla. 1st DCA 1985) (quoting Barnes v. Parker, 464 So.2d 1298, 1299 (Fla. 1st DCA 1985)). Under the Workers' Compensation Law, an employer is under a continuing obligation, once it has knowledge of an employee's injury, to place needed benefits in the hands of the injured worker. An employer must offer or furnish benefits when the employer knows, or reasonably should *742 know from facts properly and diligently investigated, that such benefits are due. Sistrunk v. City of Dunedin, 513 So.2d 200 (Fla. 1st DCA 1987). This obligation cannot be met unless the employer informs the injured worker of the benefits to which he or she may be entitled. Walt Disney World Co. v. Harrison, 443 So.2d 389 (Fla. 1st DCA 1983). The facts indicate that on January 4, 1982, Dr. Huster assigned claimant an impairment rating of 10% of the body as a whole. Thus, the carrier was aware that claimant suffered a permanent impairment, and the carrier was under an obligation to contact the claimant to assist him in securing any benefits to which he may have been entitled. Florida Erection Services, Inc. v. McDonald, 395 So.2d 203, 211 (Fla. 1st DCA 1981).
Although the E/C eventually notified claimant subsequent to June 25, 1986, that claimant might be entitled to wage-loss benefits, such notification was not timely. The E/C offered no explanation at the hearing as to why claimant was not notified of his possible right to wage-loss and TPD benefits immediately subsequent to December 2, 1982, the date TTD benefits were terminated. Furthermore, once the E/C finally notified claimant of his right to benefits, the E/C then asserted that claimant's benefits were barred by the statute of limitations. The untimely letter informing the claimant of his benefits was dated June 25, 1984. The E/C contend that the statute of limitations would run on July 8, 1984, thus leaving claimant only less than 13 days to apply for benefits.
An insurance carrier cannot mislead a claimant into believing that liability is accepted, only to later deny liability after the time has expired for filing the claim, defending on the basis of the Statute of Limitations.
Engle v. Deerborne School, 226 So.2d 681, 682 (Fla. 1969).
In the instant case, it would be inequitable to allow the E/C to shirk their responsibilities and obligations to notify claimant of possible benefits under the Workers' Compensation Act, and then assert that claimant's untimely claim for benefits is barred by the statute of limitations. Accordingly, we reverse the order of the DC finding that the statute of limitations set forth in section 440.19(2), Florida Statutes (1981) has run, and we remand the case to the DC for further proceedings.
Furthermore, we find that section 440.15(3)(b)3.a. does not bar claimant from receiving wage-loss benefits. That section provides as follows:
3. The right to wage-loss benefits shall terminate:
a. As of the end of any 2-year period commencing at any time subsequent to the month when the injured employee reaches the date of maximum medical improvement, unless during such 2-year period wage-loss benefits shall have been payable during at least 3 consecutive months;
Section 440.15(3)(b)3.a. is not a statute of limitations in the sense that section 440.19(2)(b) is a statute of limitations. Rather, section 440.15(3)(b)3.a. establishes the length of time that wage-loss benefits may be paid. Normally, wage-loss benefits will terminate at a date two years from the date of MMI. However, if wage-loss benefits are payable during at least three consecutive months of that two-year period, i.e., the amount of income received by the worker is less than his pre-injury earnings, then the right to wage-loss benefits will not terminate under section 440.15(3)(b)3.a. Monroe Furniture Co. v. Bonner, 509 So.2d 1264 (Fla. 1st DCA 1987).
In her order, the DC impliedly states that, in order to avoid the limitations period set forth in section 440.15(3)(b)3.a., wage-loss forms must be filed within two years of the date of MMI. Under the case law interpreting section 440.15(3)(b)3.a., this finding was too broad. Accordingly, we reverse the DC's finding that section 440.15(3)(b)3.a. bars claimant's request for wage-loss benefits.
REVERSED and REMANDED.
MILLS and WIGGINTON, JJ., concur.