843 So.2d 1066 (2003)
Pamela DUFRENE
v.
VIDEO CO-OP and LOUISIANA WORKERS' COMPENSATION CORPORATION.
No. 2002-C-1147.
Supreme Court of Louisiana.
April 9, 2003.
*1067 Michael L. Hebert, Baton Rouge, Counsel for Applicant.
Merilla B. Miller, Counsel for Respondent.
CALOGERO, Chief Justice.
At issue in this case is the proper construction of two workers' compensation statutes dealing with an employee's right to collect supplemental earnings benefits ("SEB"). Louisiana Revised Statute 23:1209(A) provides that an employee may file a claim for SEB within three years of the date of the last indemnity benefit payment.[1] Louisiana Revised Statute *1068 23:1221(3)(d)(i), on the other hand, states that the right to SEB shall terminate at the end of any two-year period commencing after termination of temporary total disability payments ("TTD"), unless SEB has been payable for at least thirteen consecutive weeks.[2] Plaintiff filed the current claim for SEB after two years, but before the expiration of three years, from the discontinuance of TTD; thus, her claim falls between the time periods set forth in the two statutes.
The First Circuit Court of Appeal below held that § 1221(3)(d)(i) served as a two-year prescriptive period, which abrogated plaintiff's right to file her claim within the three-year provision of § 1209(A), because SEB had not been payable to her for thirteen consecutive weeks during the two-year period commencing after TTD payments had ended. Another state appellate circuit, the Fifth Circuit Court of Appeal, treats § 1221(3)(d)(i), not as a prescriptive period cutting off a worker's right to file a claim for SEB, but as a provision setting forth the duration, and subsequent termination, of SEB payments once a worker has filed a claim for SEB. We granted certiorari to resolve the conflicting interpretations by the courts of appeal. We reverse the court of appeal below, adopt the statutory interpretation espoused by the Fifth Circuit Court of Appeal, and hold that plaintiff's claim for SEB has not prescribed under § 1209(A).

FACTS AND PROCEDURAL HISTORY
Ms. Pamela Dufrene ("plaintiff") was employed by the defendant Video Co-op on November 13, 1996. While working at the checkout counter, Ms. Dufrene was beaten and stabbed, and thus severely injured by an assailant. The parties do not dispute that Ms. Dufrene was injured in the course and scope of her employment. She received TTD payments from November 14, 1996 through March 11, 1997. No further indemnity benefits were paid, but Ms. Dufrene continued to receive reimbursement for medical expenses. On October 7, 1999, Ms. Dufrene underwent cervical fusion surgery made necessary by the November 13, 1996 injury. On October 27, 1999, about two and a half years after her TTD payments ended, she filed a claim with the Office of Workers' Compensation seeking to have indemnity benefits reinstated in the form of SEB.
Video Co-op and the Louisiana Workers' Compensation Corporation ("defendants") filed a peremptory exception of prescription, alleging that La. Rev. Stats. 23:1209(A) and 23:1221(3)(d)(i) bar plaintiff's claim for SEB. Specifically, defendants admit that plaintiff's claim falls within the three-year prescriptive period of § 1209(A), yet they urge that § 1221(3)(d)(i) sets forth another, more specific two-year prescriptive period or, they say, peremptive period, which cuts off plaintiff's right to file a claim for SEB under § 1209(A). Because plaintiff has not alleged, and cannot prove, that SEB was payable for thirteen consecutive weeks during the two-year period after termination *1069 of her TTD payments, defendants contend that her right to file a claim for SEB has prescribed or perempted under § 1221(3)(d)(i).
Plaintiff contends, however, that peremption is not involved in this situation, and that § 1209(A) is the only prescriptive statute governing the time in which a party must file a claim for indemnity benefits. According to plaintiff, § 1221(3)(d)(i) is neither a prescriptive nor a peremptive statute. Rather, it establishes the period of entitlement to SEB once a claim is filed. In other words, plaintiff contends that § 1221(3)(d)(i) addresses the length of time a claimant can receive SEB payments, and the conclusion or end period of such entitlement under specified circumstances.
The Office of Workers' Compensation granted defendants' exception of prescription and dismissed plaintiff's claim for SEB with prejudice. The workers' compensation hearing officer agreed with plaintiff's contention that § 1221(3)(d)(i) did not set forth a prescriptive period and that plaintiff's claim was timely under § 1209(A); however, hearing officer stated that she was bound to rule in accordance with First Circuit precedent supporting defendants' position. The First Circuit Court of Appeal thereafter affirmed the decision of the hearing officer, choosing to follow its prior decisions in Smith v. State of Louisiana through Dept. of Health and Hospitals, 94-1533 (La.App. 1st Cir.3/3/95), 652 So.2d 635, and Sept v. City of Baker, 98-1190 (La.App. 1st Cir.5/18/99), 733 So.2d 748.
The court of appeal held that plaintiff's claim was prescribed under § 1221(3)(d)(i), reasoning that this statute required her to file the claim within two years of the discontinuance of TTD payments. The court additionally noted that, had SEB been payable to plaintiff for at least thirteen consecutive weeks during the two-year period following termination of TTD, § 1221(3)(d)(i) would not have been applicable, and plaintiff could have availed herself of the three-year prescriptive period of § 1209(A). Dufrene v. Video Co-op & La. Workers' Compensation Corp., 01-0261, p. 4 (La.App. 1st Cir.3/28/02), 813 So.2d 619, 621.
In a controlling case from the First Circuit Court of Appeal, the Smith court was faced with a claimant who, like Ms. Dufrene, filed a claim for SEB within the three-year period of § 1209(A), but outside the two-year period of § 1221(3)(d)(i). See Smith, 94-1533, p. 2, 652 So.2d at 636. That court held that the claimant's request for SEB (on August 20, 1993) was barred by the two-year limitation of § 1221(3)(d)(i). The claimant had previously received SEB, but only for a seven-week period within the two-year period following termination of TTD, which is less than the thirteen weeks stipulated in § 1221(3)(d)(i). See Smith, 94-1533, p. 3, 652 So.2d at 636-37. The Smith court went on to note that, had SEB been payable to the claimant for thirteen consecutive weeks within the two-year period after TTD payments ended (April 22, 1991 to April 22, 1993), she could have taken advantage of the longer three-year prescriptive period provided in § 1209(A).[3]
The precise issue before the Sept court, on the other hand, does not necessarily command the result reached by the court of appeal in the present case. In Sept, the claimant, who had previously received benefits classified as TTD, argued that these very benefits should have been classified as SEB because he was able during *1070 that time to perform light-duty work.[4]Sept, 98-1190, p. 3, 733 So.2d at 749. Essentially, the claimant was making an attempt to reclassify the TTD benefits as SEB to avoid prescription. Sept, 98-1190, p. 4, 733 So.2d at 750. The Sept claimant apparently conceded, correctly or not, that § 1221(3)(d)(i)'s two-year period was a prescriptive one. Id. The court applied the manifest error standard of review and upheld the lower court's findings that the claimant's benefit payments were TTD rather than SEB. Sept, 98-1190, p. 9, 733 So.2d at 752. The Sept opinion focused on the nature of the payments received by claimant and did not address the relationship between §§ 1209(A) and 1221(3)(d)(i) or the accuracy of the Smith court's holding. Instead, the Sept court applied the law of Smith regarding prescription of claims for SEB, presumably because that was the applicable precedent in the First Circuit. Sept, 98-1190, p. 5, 733 So.2d at 750 (citing Smith, 94-1533, p. 3, 652 So.2d at 636).
Therefore, in the First Circuit, beginning with the decision in Smith, a claimant must prove that SEB had been payable to him for at least thirteen consecutive weeks during the two-year period commencing after termination of TTD to take advantage of the three-year prescriptive period of § 1209(A).[5]
The Fifth Circuit Court of Appeal has also addressed the relationship between the time periods of §§ 1209(A) and 1221(3)(d)(i). In Bibbins v. Boh Construction, 99-349 (La.App. 5th Cir.10/13/99), 746 So.2d 154, a worker filed a claim for SEB more than two years after the termination of TTD benefits, but before the lapse of three years. The defendant in that case, like the defendant in the instant case, asserted that § 1221(3)(d)(i) terminated the worker's right to receive SEB because thirteen consecutive weeks of SEB had not been payable in the two-year period commencing after the last payment of TTD. Bibbins, 99-349, p. 7, 746 So.2d at 158. The court rejected the defendant's argument, finding that the three-year prescriptive period of § 1209(A) is the only statute governing a claimant's right to file a claim for SEB. Bibbins, 99-349, p. 8, 746 So.2d at 159. The court further held that § 1221(3)(d)(i) addresses itself to the termination of SEB once entitlement has been proven and the benefits have been awarded, but does not pertain to the case where a claimant is asserting his outset entitlement to SEB. Id. Because he filed his claim within three years of the last indemnity benefit payment (TTD in this case), the Bibbins plaintiff's claim for SEB was timely under § 1209(A). Id.
We granted certiorari to resolve this split in the First and Fifth Circuits and to determine the proper application of two confusing, if not conflicting, SEB statutes. We hold that the court of appeal below erred in finding that plaintiff's claim for SEB is prescribed through the application of § 1221(3)(d)(i). The Fifth Circuit's analysis in Bibbins v. Boh Brothers Construction correctly resolves the issue. Therefore, for these and the following reasons, we find it necessary to remand this action to the Office of Workers' Compensation *1071 for proceedings consistent with this opinion.

LAW AND ANALYSIS
Louisiana workers' compensation law provides that an employee who suffers a workplace injury, and thus becomes unable to earn 90 percent of his pre-injury wages, is entitled to receive SEB. La.Rev. Stat. 23:1221(3)(a). Section 1209 is entitled "Prescription; timeliness of filing; dismissal for want of prosecution," and it provides in pertinent part:
A. In case of personal injury ... all claims for payments shall be forever barred unless ... within one year after the accident a formal claim has been filed.... Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) [supplemental earnings benefits] this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1) [temporary total disability], (2) [permanent total disability], (3) [supplemental earnings benefits], or (4) [permanent partial disability]. (emphasis and bracketed words are added).
Plaintiff filed her current claim for SEB on October 27, 1999. Because she filed this claim within three years of the date of her last TTD payment, which occurred on March 11, 1997, § 1209(A)'s prescriptive period had not expired when the claim was filed.
Our analysis does not end with a discussion of § 1209(A) because the court of appeal below found that § 1221(3)(d)(i) sets forth a conflicting two-year time period, which it perceived to be prescriptive, and which serves to truncate the amount of time an employee otherwise has for filing an SEB claim under § 1209(A). Section 1221, entitled "Temporary total disability; permanent total disability; supplemental earnings benefits; permanent partial disability; schedule of payments," provides in pertinent part:[6]
(3) Supplemental earnings benefits:
* * *
(d) the right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate:
(i) As of the end of any two-year period commencing after termination of temporary total disability, unless during such two-year period supplemental earnings benefits have been payable during at least thirteen consecutive weeks.
Contrary to the court of appeal below, the Fifth Circuit in Bibbins interpreted this statute as addressing the duration of time an employee is entitled to receive SEB payments. Bibbins, 99-349, p. 8, 746 So.2d at 159. We agree with the Fifth Circuit that § 1221(3)(d)(i) sets forth a circumstance under which an employee's SEB payments will terminate, and is not a prescriptive statute. The statute that governs prescription of an employee's claim, i.e., within what period of time an employee must file a claim, is § 1209(A).
Before beginning our analysis, we note that H. Alston Johnson, III, the author of the workers' compensation section of the Louisiana Civil Law Treatise, expresses a view contrary to the First Circuit's interpretation of the two pertinent statutory *1072 provisions. He believes that § 1221(3)(d)(i) addresses duration and subsequent termination of SEB payments, much like the Fifth Circuit found in Bibbins. Regarding the Smith case, Mr. Johnson states:

See generally Smith v. State through DOHH, 652 So.2d 635 (La.App. 1st Cir. 1995), in which the claim was held to be prescribed as to all benefits other than SEB, and SEB was not available in the court's view because fewer than 13 weeks of such payments had been made during the preceding two-year period prior to suit. This is a doubtful conclusion in light of the intended three-year period to be able to seek such benefits; the two-year provision is a "termination" provision, not a prescriptive period.
Malone & Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation Law and Practice, § 384, at 325 & fn. 78 (4th ed.2002).
An examination of the history of these two statutory provisions will help us determine the legislature's intent regarding them. With the 1975 amendments to the Workers' Compensation Act, the legislature shifted the emphasis of the Act from benefits for total and permanent disability to benefits based on partial disability. Malone & Johnson, supra, § 276, at 655. After the 1975 amendments, § 1221(3) of the Act addressed computation of partial disability benefits, and set forth the maximum amount of time an employee would be entitled to receive such partial disability benefits.[7] In 1983, the legislature renamed "partial disability" benefits as "supplemental earnings benefits," and amended § 1221(3) to include this new terminology. Id. The amended statute continues to address the computation of SEB and the maximum amount of time an employee is entitled to draw SEB.
Thus, in 1983, the legislature provided an extended 520-week maximum duration for receipt of SEB, subject to termination sooner under § 1221(3)(d)(i) if SEB is not payable for thirteen consecutive weeks during any two-year period commencing after TTD ends, or if the employee retires. Malone & Johnson, supra, § 283, at 697 ("In 1983, the legislature introduced some other concepts which can affect the duration of payments. The worker's SEB payments `shall terminate': (1) at the end of any two-year period following the end of TTD, unless during that two-year period, SEB payments have been payable during at least thirteen consecutive weeks...."). Neither the pre-1983 nor the post-1983 version of § 1221 contains a prescriptive period setting forth the time period an employee has to file a claim.
Prior to the 1983 amendments, § 1209 provided the applicable prescriptive periods for each type of workers' compensation benefit. Similar to the time periods set forth in the present version of the statute, a claim for payment of "partial disability" was forever barred unless filed: (1) within one year after the accident; or (2) within three years of the last payment of any type of compensation. In the 1983 amendments, wherein SEB was adopted, the legislature chose to carry over the three-year prescriptive period applicable to claims for partial disability, and apply that prescriptive period to claims for SEB.
In sum, with the 1983 amendments, the legislature amended both *1073 § 1221(3)(d)(i) and § 1209(A) to govern the newly designated SEB. It is unlikely that the legislature would enact two conflicting prescriptive periods in the same year without referencing how they fit together or should be coordinated. We find that these two statutory provisions do not conflict at all. Section 1209(A) is the only prescriptive period setting forth the amount of time a worker has to file a claim for benefits. Section 1221(3)(d)(i), on the other hand, establishes the substantive period an employee is entitled to receive SEB payments, and when and how they may terminate.
Established rules of statutory construction further support our interpretation of §§ 1209(A) and 1221(3)(d)(i). If the language of a statute is susceptible of different meanings, the law must be interpreted as having the meaning which best conforms to the purpose of the law. La. Civ.Code art. 10. The intent of § 1221(3)(d)(i) is to end SEB when the employee no longer needs the payments because he has, over a two-year period without interruption by a thirteen consecutive week period, consistently been able to earn at least 90 percent of his pre-injury wages. H. Alston Johnson, Bound in Shallows and Miseries: The 1983 Amendments to the Workers' Compensation Statute, 44 La. L.Rev. 669, 678 (1984); Denis Paul Juge, Louisiana Workers' Compensation, § 11:3, at 11-30 (2d ed.1999 & supp. 2002). This legislative purpose of § 1221(3)(d)(i)to end payments when they are no longer neededis thwarted by the court of appeal's analysis, which denies the right to file a claim for SEB to a claimant who has not been working and is in need of the benefits.
Furthermore, the First Circuit's interpretation of § 1221(3)(d)(i) as a prescriptive statute abrogates the right of certain claimants, such as plaintiff, to file a claim for SEB in accordance with the prescriptive period clearly set forth in § 1209(A): three years from the last payment of any type of indemnity benefit. This interpretation fails to give full effect to the language of § 1209(A). Because the two statutes deal with the same subject matter, SEB, they should be harmonized if possible. See City of Pineville v. American Federation of State, County, & Municipal Employees, 00-1983, p. 4 (La.6/29/01), 791 So.2d 609, 612. Our determination that § 1221(3)(d)(i) does not govern prescription of claims, but sets forth termination of the period of entitlement to benefit payments, gives full effect to both statutes and allows them to work together in a logical fashion.
Although we recognize that the title of a statute is not the law, we can look to the title to get a general understanding of the meaning of the statute's words. See State ex rel. Thompson v. Department of City Civil Service, 214 La. 683, 38 So.2d 385, 389 (1949). The legislature chose to entitle § 1209 as a prescriptive statute, whereas neither the title nor the language of § 1221 speaks of prescription, or when an employee must file a claim.[8]
When considered within the context of the entire statute, it becomes apparent that § 1221(3)(d)(i) addresses the duration of SEB, and does not establish a prescriptive period for the assertion of a claim. This disputed provision is a subsection of § 1221(3)(d), which sets forth the maximum number of weeks an employee can receive SEB payments: "the right to supplemental *1074 earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks...." Numerous courts have recognized that § 1221(3)(d)'s 520-week period addresses the maximum duration of SEB payments. See, e.g., Duncan v. State, DOTD, 615 So.2d 305, 307 (La.1993); Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1009 (La.1989); Breuhl v. Hercules Concrete Plumbing, Inc., 94-2311, p. 11 (La.App. 4th Cir.5/16/95), 656 So.2d 1055, 1061; Hinton v. Scott Hydraulics, Inc., 614 So.2d 820, 825 (La.App. 2d Cir.1993); Woolsey v. Cotton Bros. Bakery Co., 535 So.2d 1119, 1127 (La.App. 2d Cir.1988).
A simple reading of § 1221(3)(d)(i) indicates that it provides one exception to the typical 520-week duration of SEB payments set forth in § 1221(3)(d). In fact, this court has recognized in dicta that the statute sets out circumstances under which the employee's usual 520-week entitlement to SEB will be terminated sooner. See, e.g., Duncan, 615 So.2d at 308 & fn. 6 (holding that worker was entitled to acceleration of SEB payments as penalty against recalcitrant employer under La. Rev.Stat. 23:1333, and that maximum duration of benefits would be accelerated). The legislature apparently intended the statutory exception of § 1221(3)(d) to benefit the employer by decreasing the period of time it could be liable to provide SEB for a employee who has been working at full capacity for a substantial period without the need for these payments. Juge, supra, at 11-30. This limitation makes sense. If the worker has consistently been able to earn at least 90 percent of his pre-injury wages in any two year period after termination of TTD, the legislature has determined that SEB will no longer be necessary to supplement the worker's income.
The court of appeal's holding that § 1221(3)(d)(i)'s two-year "prescriptive" period begins to run from the date TTD terminates, before an employee even files claim for SEB, and serves to terminate an employee's right to seek SEB, is not supported by the statute's plain language. Again, the statute states that the right to SEB cannot exceed a maximum of 520-weeks, but shall terminate "as of the end of any two-year period commencing after the termination of [TTD], unless during such two-year period [SEB] have been payable during at least thirteen consecutive weeks." (Emphasis added). The legislature's use of the word "any" is significant. Had the legislature intended the result reached by the court of appeal, it could have simply stated that the right to claim SEB shall terminate two years after TTD terminates. The placement of "any" indicates that § 1221(3)(d)(i) will serve to terminate an employee's SEB payments, and thus benefit the employer, at any time during the 520-week duration of payments where SEB is not payable for at least thirteen consecutive weeks during any two-year period. Of course, a worker will not be able to begin receiving SEB unless the claim has not prescribed under § 1209(A).
Additionally, it is worth noting that § 1221 addresses not only SEB, but also TTD, permanent total disability, and permanent partial disability. In each of its subsections, § 1221 sets forth only the computation and duration of benefit payments and does not address the amount of time an employee has to file a claim.
In interpreting these statutes, we must keep in mind the policies and purpose behind the workers' compensation laws. It is axiomatic that the Workers' Compensation Act is remedial in nature. To effectuate its humane policies, we are bound to construe the law liberally in favor *1075 of providing compensation to the injured worker. Breaux v. Hoffpauir, 95-2933, p. 4 (La.5/21/96), 674 So.2d 234, 237; Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993); Lester v. Southern Cas. Ins. Co., 466 So.2d 25, 28 (La.1985). Furthermore, in keeping with the beneficent intent of the Act, "the time limits on institution of a claim for benefits have been very liberally interpreted over the years." Malone & Johnson, supra, § 384, at 307; see also Jackson v. Domtar Indus., Inc., 98-1335, p. 4 (La.App. 3d Cir., 4/7/99), 732 So.2d 733, 737. Our interpretation of these statutes conforms with these well-established tenets of workers' compensation law because it provides an injured employee with the longest time period provided in the Act to file a claim for benefits.
We also note that the court of appeal's interpretation of §§ 1209(A) and 1221(3)(d)(i) leads to results that are at best inconsistent with the remedial nature of workers' compensation law, and at worst absurd. Consider a worker who is injured on the job, but not so badly that he cannot work at all, and who begins to collect SEB, followed by a time period where he does not need SEB. Under § 1209(A) this worker will have three years from the termination of SEB payments to file a renewed claim for SEB if his condition worsens (§ 1209(A) gives a prescriptive period of three years from the last payment of any type of indemnity benefit). Section 1221(3)(d)(i) would not serve to shorten the time within which to file the worker's claim in this hypothetical situation because TTD was not paid, and that statute only provides for termination of SEB after TTD ends.[9]
However, under the First Circuit's analysis, a worker such as plaintiff, who is seriously injured and thus must collect TTD payments because she is incapable of working at all, will have only two years from the termination of TTD to file a claim for SEB unless the worker can prove that SEB was payable for thirteen consecutive weeks, i.e., that she was not able to earn 90 percent of her pre-injury wages for thirteen consecutive weeks of the given two-year period. We choose not to interpret these statutes in such a way as to cause inequitable results, when the logical reading of these statutes adopted by the Fifth Circuit Court of Appeal gives effect to the substance of both statutes and conforms to the long-established purpose and intent of the workers' compensation laws.
Like many aspects of the 1983 amendments to the Workers' Compensation Act, our legislature borrowed the language of § 1221(3)(d)(i) from a strikingly similar Florida statute. Johnson, 44 La. L.Rev. at 678. Consequently, the Florida courts' interpretation of that state's analogous provision provides guidance in the comparable situation presented by this case. In 1983, Florida statute 440.15(3)(b)(3)(a) stated that the right to wage-loss benefits (the Florida equivalent of SEB) shall terminate "[a]s of the end of any 2-year period commencing at any time subsequent to the month when the injured employee reaches the date of maximum medical improvement, unless during such 2-year period wage-loss benefits have been payable during at least 3 consecutive months."[10] The *1076 substance of the Florida statute is almost identical to § 1221(3)(d)(i).[11] Like Louisiana, Florida has a separate statutory provision governing when an employee must file a claim for benefits, Fla. Stat. 440.19.[12]
In Wood v. McTyre Trucking, 526 So.2d 739, 742 (Fla.Dist.Ct.App.1988), the court encountered the argument that § 440.15(3)(b)(3)(a) was a statute of limitations governing the time period in which to file a claim for benefits. The Florida appellate court rejected this argument, holding that § 440.15(3)(b)(3)(a) did not function as a statute of limitations. It held, instead, that this statute establishes the length of time that wage-loss benefits may be paid to an employee. The court noted that Fla. Stat. 440.19 was the applicable statute of limitations in workers' compensation cases.
Additionally, in Monroe Furniture Co. v. Bonner, 509 So.2d 1264, 1266 (Fla.Dist.Ct. App.1987), the court noted that the purpose of § 440.15(3)(b)(3)(a) was to prevent overcompensation of claimants who are able to secure adequate earnings. The court accordingly found that the statute's two-year limitation applied only where wage-loss benefits were not payable during three consecutive months for the sole reason that the amount of income received by the worker would disqualify him for wage-loss benefits. The court found that the statute did not terminate an employee's right to wage-loss benefits where those benefits were not paid or payable for any other reason, such as the employee's inability to work. See also American Airlines v. Miller, 575 So.2d 669, 670 (Fla. Dist.Ct.App.1991) (adopting the rule of Bonner. )
Although these decisions were statutory interpretations of § 440.15(3)(b)(3)(a) by the Florida courts of appeals and not its supreme court, we find persuasive their uniform interpretation, and apply this rule analogously to strengthen our holding today. Section 1221(3)(d)(i) does not set forth a prescriptive period dictating when an employee must file a claim for SEB, but, rather, addresses termination of payments after an employee has filed a claim and has been awarded benefits. We additionally find, similar to the Florida court in Miller, that the purpose of § 1221(3)(d)(i)'s two-year termination period is to prevent employer liability to claimants who no longer need SEB. Again, this purpose is not furthered by the court of appeal's application of the statute to an employee, like Ms. Dufrene, who has not been working, and who has never before filed a claim for SEB.
We will now address defendants' alternative argument that § 1221(3)(d)(i) *1077 sets forth a peremptive period, which completely extinguishes plaintiff's entitlement to SEB. This argument was raised for the first time in the court of appeal, which did not discuss its merits, perhaps because the controlling precedent, Smith and Sept, disposed of the issue on the basis of prescription. According to defendants, because plaintiff's right to claim entitlement to SEB ceased to exist two years after her last TTD payment, she could no longer file suit within the three-year prescriptive period of § 1209(A) to enforce this right. This argument necessarily must fail for the basic reason, previously detailed in our discussion of prescription, that § 1221(3)(d)(i) addresses only duration and subsequent termination of SEB payments, and has nothing to do with the time period within which an employee must file a claim.
To further address the merit of defendants' contention that § 1221(3)(d)(i) sets forth a peremptive period, we note that no court has ever discussed peremption in connection with § 1221(3)(d)(i), including the Smith and Sept courts, which ruled favorably to the employers. Civil Code article 3458 defines peremption as "a period of time fixed by law for the existence of a right." Further, "unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La. C.C. art. 3458. Liberative prescription merely prevents the enforcement of a right by action, whereas, in contrast, peremption destroys the right itself. Pounds v. Schori, 377 So.2d 1195 (La.1979). As applied to plaintiff's claim for SEB, the outcome would be the same if § 1221(3)(d)(i)'s two-year period were prescriptive or peremptive: plaintiff could not file her claim in either event under § 1209(A)'s three-year prescriptive period. Because § 1221(3)(d)(i) establishes the duration and subsequent termination of SEB payments once the employee has proved entitlement, we find that peremption, at least as it applies to a period of time in which an employee must file a claim or suit to enforce a right, is not applicable.
Additionally, any merit to defendants' peremption argument is overridden by the principles of statutory interpretation. It is unlikely that the legislature would have meant to perempt a claim through an employee's non-assertion in a given two-year period when simultaneously in the same Act it speaks to three-year prescription. There is a fundamental conflict between a two-year peremptive period and a three-year prescriptive period for asserting the same claim. In fact, one appellate court has recognized that the Workers' Compensation Act contains no provision reducing an employee's time to file a claim under § 1209, much less one that peremptively terminates the cause of action. Rich v. Geosource Wireline Servs., Inc., 490 So.2d 1165, 1170 (La.App. 3d Cir.1986).[13] For these reasons, we reject defendants' contention that § 1221(3)(d)(i) provides a two-year peremptive period for filing an SEB claim.

CONCLUSION
To summarize the SEB scheme put in place by the legislature, § 1209(A) sets forth the applicable three-year prescriptive period from the date of the last indemnity benefit payment for filing a claim for SEB. Once a worker begins to receive SEB, *1078 § 1221(3) governs the calculation and termination of these benefits. In any week where the worker is unable to earn at least 90 percent of his pre-injury wages, SEB will be payable to him, for a maximum of 520-weeks. If the worker is able to earn his full pre-injury salary in any given week, the employer will not owe SEB, but these weeks will not be counted toward the 520-week maximum time period. § 1221(3)(d)(ii). Under certain circumstances, the worker's SEB payments will end before the expiration of 520-weeks. One of these circumstances arises under § 1221(3)(d)(i), where a worker has begun to draw SEB, but where SEB has not been payable to him for any given thirteen consecutive weeks in any two-year period after termination of TTD, presumably because the worker is able to work at full earning capacity during this period of time. This situation is distinguishable from the situation of the current plaintiff, who has never filed a claim for SEB and has never received SEB payments, and where, consequently, § 1221(3)(d)(i) has not been triggered.
In this action, plaintiff is asserting that she is entitled to begin receiving SEB payments for the first time. Her claim is timely under § 1209(A) because it was filed within three years after termination of her last TTD payment, and the court of appeal incorrectly found that § 1221(3)(d)(i) bars this action.

DECREE
Accordingly, the judgment of the court of appeal is reversed and the case remanded to the Office of Workers' Compensation for proceedings consistent with this opinion.
JUDGMENT OF COURT OF APPEAL REVERSED; CASE REMANDED TO OFFICE OF WORKERS' COMPENSATION.
WEIMER, J., concurs with reasons.
TRAYLOR, J., concurs for reasons assigned by WEIMER, J.
VICTORY, J., dissenting in part, with reasons.
WEIMER, J., concurring.
The determinative issue in Sept v. City of Baker, 98-1190 (La.App. 1 Cir. 5/18/99), 733 So.2d 748, referenced by the majority, was whether the claimant could change the classification of benefits he collected from TTD to SEB in order to avoid prescription. The court ruled that the claimant could not change the contemporaneous classification of TTD to a classification of SEB at a later date. The seemingly conflicting provisions of LSA-R.S. 23:1209(A) and 23:1221(3)(d)(i) were not directly before the court; therefore, the court applied the precedent established in Smith v. State Department of Health & Hospitals, 94-1533 (La.App. 1 Cir. 3/3/95), 652 So.2d 635.
When specifically addressing the prescription issue posed by LSA-R.S. 23:1209(A) and 23:1221(3)(d)(i), the proper construction is that of the majority in this matter.
VICTORY, J., dissenting in part.
I agree with the majority that La. R.S. 23:1209 "is the only prescriptive period setting forth the amount of time a worker has to file a claim for benefits" and that "Section 1221(3)(d)(i), on the other hand, establishes the substantive period an employee is entitled to receive SEB payments, and when and how they may terminate." Op. at 1073. In this case, plaintiff's claim has not prescribed because she filed her suit within three years of the last payment of TTD's. However, she is not entitled to SEB unless she can prove that SEB was payable for thirteen *1079 consecutive weeks during the two-year period after termination of TTD payments. As stated by the majority:
A simple reading of § 1221(3)(d)(i) indicates that it provides one exception to the typical 520-week duration of SEB payments set forth in § 1221(3)(d).... The legislature apparently intended the statutory exception of § 1221(3)(d) to benefit the employer by decreasing the period of time it could be liable to provide SEB for a[sic] employee who has been working at full capacity for a substantial period without the need for these payment. Juge, supra, at 11-30. This limitation makes sense. If the worker has consistently been able to earn at least 90 percent of his pre-injury wages in any two year period after termination of TTD, the legislature has determined that SEB will no longer be necessary to supplement the worker's income. (Emphasis added.)
Op. at 1074. Like the majority, I too think the legislature's use of the word "any" is significant, and it certainly includes the immediate two-year period following the termination of TTD. There is nothing in La. R.S. 23:1221(3)(d)(i) that states it only applies to any two-year period commencing after a claimant has begun to receive SEB. This is simply a creation of the majority.
Thus, while I agree with the majority that La. R.S. 23:1209 is the only prescriptive period applicable to SEB, and La. R.S. 23:1221(3)(d)(i) is a termination or duration statute, a plaintiff's right to SEB will be terminated if he or she cannot show that during any two-year period commencing after termination of TTD, including the first two-year period commencing after termination of TTD, supplemental earnings benefits have been payable during at least thirteen consecutive weeks.
As plaintiff's counsel stated to this Court at oral argument, since plaintiff's claim has not prescribed, this case should now be remanded to the trial court to determine if her rights to SEB have terminated under La. R.S. 23:1221(3)(d)(i).
NOTES
[1] Section 1209(A) states in pertinent part:

In case of personal injury ... all claims for payments shall be forever barred unless ... within one year after the accident a formal claim has been filed.... Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4).
[2] Section 1221(3) provides in pertinent part:

(d) the right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate:
(i) As of the end of any two-year period commencing after termination of temporary total disability, unless during such two-year period supplemental earnings benefits have been payable during at least thirteen consecutive weeks.
[3] Under § 1209(A), the claimant would have had three years from the date of her last SEB payment on June 2, 1991, to file a subsequent claim for SEB.
[4] Compensation for TTD shall be awarded only if the employee proves by clear and convincing evidence that he is physically unable to engage in any employment. La.Rev. Stat. 23:1221(1)(c).
[5] The Louisiana Civil Law treatise recognizes that this appellate circuit treats the termination provision of § 1221(3)(d)(i) as only a "sort of prescriptive period," a somewhat quizzical reference to that court's opinions in Smith and Sept. Malone & Johnson, infra, § 276, at 661.
[6] Unlike the title of § 1209, the title of § 1221 does not contain a reference to prescription or when an employee must file a claim.
[7] An employee was entitled to a maximum of four hundred weeks of partial disability benefits from injury occurring on and after September 1, 1975, and on or before August 31, 1976; a maximum of four hundred twenty-five weeks from injury occurring on and after September 1, 1976, and on or before August 31, 1977; and a maximum of four hundred fifty weeks from injury occurring on and after September 1, 1977.
[8] As previously noted, § 1209 is entitled "Prescription; timeliness of filing; dismissal for want of prosecution," and § 1221 is entitled "Temporary total disability; permanent total disability; supplemental earnings benefits; permanent partial disability; schedule of payments."
[9] Interestingly, while § 1209(A)'s three-year period begins to run from the date of the last payment of any type of workers' compensation, § 1221(3)(d)(i)'s two-year period commences upon termination of TTD only. Therefore, if an employee never receives TTD, § 1221(3)(d)(i) is not implicated.
[10] In 1989, the provision was moved from Fla. Stat. 440.15(3)(b)(3)(a) to Fla. Stat. 440.15(3)(b)(4)(a). In 1994, the provision was removed from Florida's statutory scheme.
[11] In Florida, the date of "maximum medical improvement" begins the running of the two-year period. This is defined as the date after which further recovery from an injury or disease can no longer be reasonably anticipated. Fla. Stat. 440.02. "Maximum medical improvement" is similar to "termination of temporary total disability" used in § 1221(3)(d)(i) to begin the running of the two-year period because TTD terminates when the employee's condition has improved to the point that regular treatment by a physician is not required. La.Rev.Stat. 23:1221(1)(d).
[12] Fla. Stat. 440.19, entitled "Time bars to filing petition for benefits," provides that all petitions for workers' compensation benefits shall be barred unless the petition is filed within two years after the date on which the employee knew or should have known that the injury or death arose out of work performed in the course and scope of employment. The statute further states that payment of any indemnity benefit or the furnishing of medical care shall toll the limitations period set forth above for one year from the date of such payment.
[13] The Rich court distinguished between a claimant's right to reject the Office of Workers' Compensation's recommendation under La.Rev.Stat. 23:1310.1, and the right to file a claim for benefits under § 1209. The court held that, although the claimant's right to reject the OWC's recommendation regarding his entitlement to benefits had perempted, he could, nonetheless, still file suit to collect benefits because prescription had not run under § 1209(A). The Rich court applied post 1983 law.