# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30342

United States Court of Appeals
Fifth Circuit

**FILED**

April 2, 2014

Lyle W. Cayce
Clerk

TYLER EUGENE ADAMS, JR.,

Plaintiff-Appellant,

v.

CHESAPEAKE OPERATING, INCORPORATED,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:11-CV-1504

Before HIGGINBOTHAM, DAVIS and HAYNES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge: [*]

Plaintiff-Appellant Tyler Eugene Adams, Jr. ("Adams") appeals the district court's grant of summary judgment in favor of Defendant-Appellee Chesapeake Operating, Inc. ("Chesapeake") and denial of summary judgment to Adams as to Adams's claims under La. Rev. Stat. Ann. §§ 30:103.1 and 30:103.2 and La. Rev. Stat. Ann. §§ 31:212.21-.23. We AFFIRM.

I.

Adams owns a one-third interest in property located within a drilling

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30342

and production unit authorized by the Commissioner of Conservation. Chesapeake was permitted to drill a well on the property. The well was completed on October 25, 2010. Adams possesses an unleased mineral interest in the property, which entitles him to a share of the proceeds from the well. However, Chesapeake has the right to recover the expenses of drilling, equipping, and completing the well from Adams.

On February 10, 2011, Adams sent Chesapeake a certified mail letter, which stated, in pertinent part:

> As an unleased mineral owner . . . and pursuant to Louisiana RS 30:103.1, I am formally requesting the reports/information and statement required under this statute.
>
> This letter is to advise that you have failed to comply with the provisions of Louisiana RS 30:103.1.
>
> In accordance with the requirements of the statute, below is my name and mailing address . . . .

Chesapeake received the letter on February 12, 2011 but did not respond until April 29, 2011, when it sent Adams an itemized statement of the costs of the well.[1] On April 14, 2011, Adams's attorney sent Chesapeake a second letter, notifying Chesapeake that, pursuant to Section 30:103.2, it had forfeited its right to contribution from Adams for well costs because it had failed to fulfill its duty under Section 30:103.1—that is, Chesapeake had failed to provide Adams with a report of the well expenses.

On August 1, 2011, Adams filed suit in state court, alleging two claims: (1) that Chesapeake violated Section 30:103.1 when it failed to provide him

---

[1] Adams's siblings and son also sent letters to Chesapeake. Chesapeake properly responded to the demand letters from Adams's siblings and son. Apparently, Chesapeake's failure to provide Adams with the expense report was the result of a clerical error.

No. 13-30342

with the expense report for the well within the time period set forth in Section 30:103.1; and (2) that Chesapeake failed to comply with Sections 31:212.21-.23 when it failed to give Adams production payments.   Subsequently, Chesapeake removed the suit to federal court and moved for partial summary judgment on Adams's second claim, which the district court granted.   The district court held that Sections 31:212.21-.23 only applied to parties with a mineral lease or purchasers of a mineral production payment.   Both Chesapeake and Adams then filed cross-motions for summary judgment on Adams's first claim.

The district court granted Chesapeake's motion for summary judgment and denied Adams's motion for summary judgment.   It held that Chesapeake did not have an affirmative duty under Section 30:103.1 to provide Adams with an expense report for the well until Adams first sent a certified letter requesting the report.   Therefore, Adams had to send Chesapeake an additional certified mail letter, notifying Chesapeake that it had violated Section 30:103.1 before the penalty in Section 30:103.2 was triggered.   Adams timely appeals.

## II.

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court."   *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted).   Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   "When parties file cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."   *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013) (internal quotation marks and citation

3

No. 13-30342

omitted).    There is no genuine issue of material fact "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011) (citation omitted).

"To determine Louisiana law . . . , this Court should first look to final decisions of the Louisiana Supreme Court."    *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000).    However, if the Louisiana Supreme Court has not ruled on an issue, "this Court must make an Erie guess and determine as best it can what the Louisiana Supreme Court would decide." *Id*. (internal quotation marks and citation omitted).    "In making an *Erie* guess . . . this Court may look to the decisions of intermediate appellate state courts for guidance."    *Id*.

## III.

On appeal, Adams alleges that the district court erred by holding that Chesapeake did not violate La. Rev. Stat. Ann. §§ 30:103.1 and 30:103.2 and §§ 31:212.21-.23.    Section 30:103.2, he contends, does not require that Chesapeake fail to properly respond to two certified letters.

Section 30:103.1 reads as follows:

> (A) Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil or gas, or both, upon which the operator or producer has no valid oil, gas, or mineral lease, said operator or producer shall issue the following reports to the owners of said interests by a sworn, detailed, itemized statement:
>
>> (1) Within ninety calendar days from completion of the well, an initial report which shall contain the costs of drilling, completing, and equipping the unit well.

No. 13-30342

. . .

> (C) *Reports shall be sent* by certified mail to each owner of an unleased oil or gas interest *who has requested such reports in writing*, by certified mail addressed to the operator or producer. The written request shall contain the unleased interest owner's name and address. Initial reports shall be sent no later than ninety calendar days after the completion of the well. The operator or producer shall begin sending quarterly reports within ninety calendar days after receiving the written request, whichever is later, and shall continue sending quarterly reports until cessation of production. (emphasis added).

Section 30:103.2 provides as follows:

> Whenever the operator or producer permits ninety calendar days to elapse from completion of the well and thirty additional calendar days to elapse from date of receipt of written notice by certified mail from the owner or owners of unleased oil and gas interests calling attention to failure to comply with the provisions of R.S. 30:103.1, such operator or producer shall forfeit his right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well.

Adams contends that the district court erroneously held that his February 10, 2011 letter did not satisfy the notice requirements of Section 30:103.1 and 30:103.2. Specifically, he argues that Section 30:103.1 imposes an affirmative duty upon Chesapeake to provide him with an initial report. Contrary to the district court's interpretation, he interprets Section 30:103.1(C) as merely setting forth how operators must respond to written requests for reports and providing a safe harbor when operators are unaware of the contact information for parties with an unleased interest. We disagree.

An operator or producer's duty under Section 30:103.1 is not triggered

No. 13-30342

until a written request is sent by certified mail. While Subsection A states that an operator or producer "shall issue" an initial report to unleased mineral interest owners, Subsection C limits that duty to situations where the unleased mineral interest owner has sent a written request.    Therefore, Adams's February 10, 2011 letter only triggered Chesapeake's duty to send him the well cost report.    Before the penalty in Section 103.2 can be imposed, however, Adams had to send Chesapeake another "written notice by certified mail . . . calling attention to [Chesapeake's] failure to comply with the provisions of R.S. 30:103.1."    *See* La. Rev. Stat. Ann. § 30:103.2; *see also White v. Phillips Petroleum Co.*, 232 So. 2d 83, 90-91 (La. Ct. App. 1970) (noting that the penalty in Section 103.2 was inapplicable because "[a]t no time did [plaintiffs] request a statement of costs, and at no time did they write the Operator pointing out that it had failed to comply with the statute"). [2] Consequently, summary judgment was appropriate on Adams's claim under Sections 30:103.1 and 30:103.2.

## IV.

Adams also seeks to recover from Chesapeake pursuant to Sections 31:212.21-.23.

Sections 31:212.21 reads as follows:

> If the owner of a mineral production payment or a royalty owner other than a mineral lessor seeks relief for the failure of a mineral lessee to make timely or

---

[2] Admittedly, the court in *White* was interpreting an older version of Sections 103.1 and 103.2; however, the court's analysis is still persuasive because: (1) the statutes are similar; and (2) when amending the statutes, the Louisiana legislature noted that the amended statute imposed the same obligations on operators and producers that are at issue in this case. See La. B. Dig., Resume, H.B. 624, H.R., 2001 Reg. Sess.    The only changes pertinent to this appeal were that operators and producers must now respond within 30 days from a notice sent pursuant to § 30:103.2 and expense report requests under§ 30:103.1 must be sent by certified mail rather than registered mail.    2001 La. Sess. Law Serv. Act 973, § 1.

proper payment of royalties or the production payment, he must give his obligor written notice of such failure as a prerequisite to a judicial demand for damages.

Section 31:212.22 states:

The obligor shall have thirty days after receipt of the required notice within which to pay the royalties or production payments due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the sums due or stating or failing to state a reasonable cause for nonpayment within this period has the following effect.

Section 31:212.23 instructs, in relevant part:

C. If the obligor fails to pay and fails to state a reasonable cause for failure to pay in response to the notice, the court may award as damages double the amount due, legal interest on that sum from the date due, and a reasonable attorney's fee regardless of the cause for the original failure to pay.

Adams contends that the district court erred by relying on the title of Sections 31:212.21-.23 to hold that the statutes only applied to parties to a mineral lease or purchasers of a production payment. He further argues that he is entitled to a production payment equivalent to his property interest. Section 31:212.21 extends to unleased mineral owners, in his view, because, otherwise, those owners would be the only parties unprotected under Louisiana's Mineral Code. Adams's claims are unavailing.

Because Adams readily concedes that he is not a royalty owner, we must determine whether he falls within the purview of Sections 31:212.21-.23.

The title to Sections 31:212.21-.23 reads as follows:

"An Act to enact Part 2-A of Chapter 13 of Title 31 of the Louisiana Revised Statutes of 1950, to be

No. 13-30342

> comprised of R.S. 31.212.21 through R.S. 31:212.23, to provide for the remedies and procedures for obtaining payment by a royalty owner other than a mineral lessor and by the purchaser of a mineral production payment; to provide for damages, interest, and attorney fees, and the circumstances under which they may be obtained; and to provide for related matters."
> (emphasis added).

As the district court noted, Adams does not fall within the scope of Sections 31.212.21-.23 because he is not a "purchaser of a mineral production payment." Rather, he is an unleased mineral interest owner. While Adams is correct that a section's title "do[es] not constitute part of the law," *see* La. Rev. Stat. Ann. §§ 1:12-13, it does "provide some aid in interpreting legislative intent where the language of the statute is unclear." *State on Behalf of Jones v. Mallet*, 704 So. 2d 958, 960 n.1 (La. Ct. App. 1997) (internal quotation marks and citation omitted); *Barrilleaux v. NPC, Inc.*, 730 So. 2d 1062, 1065 (La. Ct. App. 1999); *Dufrene v. Video Co-Op, La. Workers' Comp. Corp.*, 843 So. 2d 1066, 1073 (La. 2003). Section 31:212.21 merely states that it covers "the *owner* of a mineral production payment or a royalty owner." (emphasis added). "[O]wner" could refer to a party who recently purchased a production payment or to someone who acquired the production payment through some other means. *See id.* Because Section 31:212.21 is ambiguous as to the parties encompassed within the statute, we examine the title of that section of the Mineral Code to determine the scope of the statute. Based on the title to Sections 31:212-23, it is apparent that Sections 31:212.21-.23 were intended to cover the "purchasers of mineral product payments." Accordingly, Adams may not bring a claim pursuant to Sections 31:212.21-.23.[3] Therefore, we

---

[3] Contrary to Adams's argument that this interpretation leaves unleased mineral interest owners without protection, we note that unleased mineral interest owners are not

8

No. 13-30342

hold that the district court did not err when it granted summary judgment to Chesapeake on Adams's claim under Sections 31:212.21-.23.[4]

## V.

For the foregoing reasons, the district court's grant of summary judgment in favor of Chesapeake and denial of summary judgment to Adams are AFFIRMED.

---

unprotected.    Indeed, there are alternative actions available to Adams through which he can seek to recover production payments.    *See, e.g.*, La. Rev. Stat. Ann. § 30: 10(A)(3).

[4] Because we hold that the district court correctly granted summary judgment in favor of Chesapeake on Adams's claims, we need not address the alternative arguments raised by Chesapeake in support of the district court's rulings.